720 A.2d 456

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**John WAYNE, Appellant.**

Supreme Court of Pennsylvania.

Argued Dec. 9, 1997.

Decided Oct. 29, 1998.

Reargument Denied Dec. 14, 1998.

Nigro, J., concurred and filed opinion.

616

618

Daniel A. Rendine, Philadelphia, for John Wayne.

Catherine Marshall, Thomas W. Dolgenos, Philadelphia, for the Com.

Robert A. Graci, Harrisburg, for the Com., Office of Atty. Gen.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION OF THE COURT

CAPPY, Justice.

This is a direct appeal from the judgment of sentence of death.[1] Appellant was tried by a jury for the murder of Kenneth Rankine and the aggravated assault of Neville Bobby Hill, along with related charges. The jury acquitted appellant on the charges of aggravated assault and conspiracy to commit aggravated assault as to Mr. Hill.[2] The jury convicted Appellant of first degree murder as to Mr. Rankine, conspiracy to kill (Mr. Rankine) and possession of an instrument of crime.[3]

At the penalty phase of the trial the Commonwealth presented evidence of one aggravating circumstance, that appellant had been convicted of another murder committed before the offense at issue, 42 Pa.C.S. § 9711(d)(1). Appellant offered evidence of one mitigating circumstance, the character of the accused and the circumstances of the offense. 42 Pa.C.S. §9711(e)(8). The jury found that the aggravating circumstance had been established, but that the mitigating circumstance had not been established, and returned a sentence of

---

1. See 42 Pa.C.S. §§ 722(4), 9711(h)(1); Pa.R.A.P. 702(b) and 1941.

2. 18 Pa.C.S. §§ 2701 and 903.

3. 18 Pa.C.S. §§ 2502(a), 903, and 907.

death. 42 Pa.C.S.§ 9711(c)(iv). The trial court imposed the sentence of death on the charge of first degree murder. Additional sentences of four to eight years and six to twelve months were imposed on the charges of criminal conspiracy and possession of an instrument of crime, which sentences were to run concurrently to the sentence of death. This appeal followed directly from the imposition of the sentence of death. For the reasons that follow, we affirm.

 Appellant's first challenge is to the sufficiency of the evidence. To find appellant guilty beyond a reasonable doubt for the crime of murder in the first degree, the Commonwealth must establish that a human being was killed, that the defendant was responsible for the killing, and that the killing was done with deliberation. *Commonwealth v. Bronshtein,* 547 Pa. 460, 691 A.2d 907 (Pa.1997). What distinguishes first degree murder from all other forms of homicide is the existence of a specific, willful, premeditated, and deliberate, intent to kill. *Commonwealth v. Paolello,* 542 Pa. 47, 665 A.2d 439 (Pa.1995). Each member of a conspiracy to commit murder can be convicted of murder of the first degree, regardless of who inflicted the fatal wound. *Commonwealth v. Jones,* 542 Pa. 464, 668 A.2d 491 (Pa.1995). Specific intent to kill can be inferred from the use of a deadly weapon on a vital part of the body. *Commonwealth v. Collins,* 549 Pa. 593, 702 A.2d 540 (Pa.1997). In reviewing a challenge to the sufficiency of the evidence, the evidence presented and all reasonable inferences therefrom must be viewed in the light most favorable to the Commonwealth as the verdict winner. *Bronshtein,* 691 A.2d at 911.

Appellant was convicted of murder in the first degree and criminal conspiracy to kill Kenneth Rankine.[4] The evidence presented at trial revealed the following details concerning the shooting of Mr. Rankine on the night of August 12, 1994. Ms. Jacqueline Brown testified that on the evening in question, she was standing on the sidewalk outside her home at 1301 South 53rd Street in Philadelphia at 11:30 p.m. Ms. Brown was with

---

4. Appellant does not challenge the sufficiency of the evidence as to his conviction for possession of an instrument of crime, 18 Pa.C.S. § 907.

her cousins, Kenneth Rankine and Neville Bobby Hill, and her boyfriend Paul Green. While this group was assembled, three individuals approached them simultaneously. Two unidentified men approached together from the direction of 52nd Street as appellant approached from 53rd Street and Warrington Avenue.[5] Appellant engaged Mr. Hill in conversation for about fifteen minutes. This was a private conversation between appellant and Mr. Hill and did not involve the other persons present. Ms. Brown did not observe any interaction between appellant and the two unknown individuals.

Ms. Brown spoke to one of the unknown men, commenting on his boots. When the unknown man acknowledged Ms. Brown's compliment by modeling his boots, he turned his body and Ms. Brown observed that he possessed a gun. Ms. Brown advised her boyfriend, Paul Green, of the gun. Mr. Green directed Ms. Brown to go into her house. Ms. Brown retreated to the enclosed porch of her house from where she continued to observe the persons on the street. Mr. Rankine came onto the porch and Ms. Brown advised him that one of the men was carrying a gun. Mr. Rankine walked through Ms. Brown's house out the back door to the street, then retraced his steps and returned to the group on the sidewalk.

When Mr. Rankine returned to the street, Ms. Brown observed appellant "grip up" Mr. Hill and walk him across the street. At that same time, the two unknown men began shooting at Mr. Rankine. Mr. Rankine fell to the ground. Mr. Hill ran away from appellant and the two unknown men shot at Mr. Hill as he was running. The two unknown men and appellant all ran from the scene in the same direction.

Immediately following the shooting, Ms. Brown identified a photograph of appellant at the police station. Ms. Brown also made a positive identification of appellant at trial. Ms. Brown testified that on the night of the shooting appellant had a distinctive gold tooth. Ms. Brown acknowledged that at the time of trial appellant did not have a gold tooth, however she

5. These two men were never apprehended and thus their identities were never discovered.

remained positive in her identification of appellant as the man she observed on the night of August 12, 1994.

Mr. Hill testified [6] that when appellant first approached, he recognized him from a previous meeting. Appellant's conversation with Mr. Hill was casual; they discussed a nearby party. Mr. Hill observed Mr. Rankine go to his car. When Mr. Rankine came back to the group Mr. Hill overheard Mr. Rankine and the two unknown men exchange bitter words. Mr. Rankine and the two unknown men were standing behind Mr. Hill and appellant. Mr. Hill heard sounds indicative of wrestling. Mr. Hill turned and observed one of the unknown men pointing a gun at Mr. Rankine. At that point appellant grabbed Mr. Hill and held a gun to his head, forcing him across the street towards Mr. Hill's car. Mr. Hill did not see the gun but he felt the muzzle against his head. Mr. Hill heard a click, which he believed was the gun firing. Mr. Hill realized the gun had not fired at the same time he heard the gunfire behind him from the direction of Mr. Rankine and the two unknown men. Mr. Hill fled; hearing shots being fired in his direction as he ran.

Officer Napoli of the Philadelphia Police Department was the first officer to arrive at the scene of the shooting. Officer Napoli observed a gun in Mr. Rankine's right hand. The officer identified the gun as a .380 semi-automatic handgun. A short time after the arrival of Officer Napoli, Carolyn Auerweck, a criminal evidence specialist for the mobile crime unit of the Philadelphia Police Department arrived at the scene. Ms. Auerweck retrieved two nine-millimeter cartridge cases and four .380 cartridge cases from the scene.

Doctor McDonald the assistant medical examiner for the City of Philadelphia performed the autopsy on Mr. Rankine. The cause of death was multiple gunshot wounds. Dr. McDonald identified six distinct gunshot wounds: 1) in the back

6. Mr. Hill was not available at trial. After the trial court determined that the Commonwealth had made a diligent search for the witness the court permitted Mr. Hill's testimony from the preliminary hearing to be read into the record for the jury. Appellant's challenge to this ruling is discussed at length later in this opinion.

of the head, 2) the back of the neck, 3) the left upper back, 4) the left middle back and traveling through the aorta, 5) the left lower back and traveling into the aorta and the liver, and 6) the right lower back traveling through the intestines and the abdomen. Dr. McDonald testified that three of the six wounds were fatal as they struck a vital part of the body.

Officer O'Hara of the Philadelphia Police Department testified as a firearms expert. Officer O'Hara testified that the gun found in Mr. Rankine's hand had not been fired. Officer O'Hara testified that the .380 cartridges found at the scene did not come from Mr. Rankine's gun.

■ The evidence presented was sufficient to establish beyond a reasonable doubt that appellant entered into a conspiracy with two unidentified men on the night of August 12, 1994 to kill Kenneth Rankine. Although appellant and the two unknown men approached Mr. Hill and Mr. Rankine from different directions, the fact that they all arrived simultaneously leads to the logical inference that their joint appearance was planned. While appellant engaged Mr. Hill in conversation the two unknown men did not interact with any of the other persons present. Ms. Brown testified that she attempted a conversation with one of the men by commenting on his boots, but the two men made no attempt at further conversation. In fact, Ms. Brown walked away from the group on the sidewalk when the gun one of the men was carrying aroused her suspicions. The sequence of events leads to the logical inference that appellant engaged Mr. Hill in a meaningless conversation to distract him from the intentions of the two unidentified men. When the two unidentified men began shooting at Mr. Rankine, appellant forcibly removed Mr. Hill from the center of the melee. Appellant held a gun to Mr. Hill's head. Appellant attempted to use that gun on Mr. Hill, however, the gun malfunctioned and Mr. Hill was able to escape, even though his flight was followed with a hail of bullets from the two unknown men. Appellant was observed fleeing the scene of the shooting in the same direction as the two unidentified men. The record presents sufficient information from which the jury could reasonably infer that

appellant was a co-conspirator of the two unidentified men who actually inflicted the fatal wounds on Mr. Rankine. Appellant's challenge to the sufficiency of the evidence is denied.

■ The majority of appellant's remaining claims are raised in the alternative as direct error and/or as ineffective assistance of trial counsel. Appellate counsel is distinct from trial counsel and was appointed after imposition of sentence. Trial counsel did not file post-trial motions, nor did appellate counsel file a statement of matters complained of on appeal. Almost all of the issues presented in this appeal were raised for the first time in appellant's brief to this court. In direct appeals from the imposition of a sentence of death this court generally applies a rule of relaxed waiver to permit review of all claims of error in such cases, given the finality of the verdict. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (Pa.1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). The relaxed waiver doctrine was developed by this court as a failsafe mechanism to ensure full appellate review of all claims presented in death penalty cases. Relaxed waiver permits review of claims not properly preserved. However, where new counsel represents a capital defendant in this court and presents a claim of ineffective assistance, it is inappropriate to consider the underlying issue under the guise of relaxed waiver.

In order to obtain relief on a claim of ineffective assistance of counsel the following standard must be met:

There are three elements to a valid claim of ineffective assistance. We inquire first whether the underlying claim is of arguable merit; that is, whether the disputed action or omission by counsel was of questionable legal soundness. If so, we ask whether counsel had any reasonable basis for the questionable action or omission which was designed to effectuate his client's interest. If he did, our inquiry ends. If not, the appellant will be granted relief if he also demonstrates that counsel's improper course of conduct worked to his prejudice, i.e., had an adverse effect upon the outcome of the proceeding.

*Commonwealth v. Davis,* 518 Pa. 77, 541 A.2d 315, 318 (Pa. 1988).

■ Appellant's initial challenge is that counsel was ineffective for failing to object to the trial court's improper statement of law when instructing the jury on co-conspirator liability as to first degree murder. Appellant asserts that the charge misstated the law by informing the jury that appellant could be guilty of first degree murder even though he did not possess a shared *specific intent to kill* with his co-conspirators. Appellant was charged with the murder of Kenneth Rankine as either an accomplice or as a co-conspirator. In elucidating the legal culpability of appellant as either an accomplice or a co-conspirator the trial court gave the following instructions:

> Now, with regard to a state of mind, mental state of the person who is charged with a crime as an accomplice, when we get to homicide, the person that may be guilty as an accomplice, you have to look at his state of mind to see whether he had the necessary intent to kill or intent to cause harm. And this required mental state must be proven beyond a reasonable doubt to be one which the accomplice had in his mind and can't depend on proof of intent to kill only as the principal party.

> Now, with regard to co-conspirator, someone is liable even though he [sic] was the conspirator who had the state of mind as necessary. The person is guilty as a co-conspirator doesn't have to have the same state of mind.

> In other words, two people conspire to kill someone, the person who pulls the trigger may have the intent to kill. It doesn't matter whether the co-conspirator had it in his mind or not. He's responsible. When it comes to liability as an accomplice, the person who is the accomplice has to have in his mind the required mental state. And I'm going to talk about certain mental states in a few minutes, malice, intent and so on. Keep this in mind.

Trial Transcript (T.T.) May 25, 1995 pp. 74–76

Now, there, you have the mental states such as malice and intent, such as intent to kill, or liability as an accomplice, that is, someone who went along and accompanied and either aided or helped or solicited or whatever. As I mentioned before, you have to look at the mental state of the accomplice; in other words, the person pulling the trigger might have a certain mental state indicating malice or intent to kill. But for first degree you have to find that in the accomplice, also, in his mind. So you have to say the accomplice had the intent to kill or malice for first degree or malice and the intent to cause serious bodily harm for third degree.

Now with regard to a co-conspirator liability there is a little difference. What I said to you earlier is—I believe I covered it and I want to make sure I do it clearly—a person can be liable as a co-conspirator if someone else in the conspiracy commits the killing. You can still be liable. The defendant could still be found liable if you so choose as a co-conspirator. But here you look to the mental state of the principal.

In other words, if one is liable as a co-conspirator, you don't look at mental state. You look at the mental state of the person who pulled the trigger. If the person who pulled the trigger had the malice and the intent to either kill or cause serious bodily harm, then the co-conspirator would be liable even if he didn't have that particular mental state, himself. There's a big difference.

An accomplice has to have this mental state in his own mind. The co-conspirator is responsible for the mental state from the person who actually pulled the trigger. T.T. May 25, 1995 pp. 92–93.

The charge sets forth a distinction as to the mental state of an accomplice as opposed to that of a co-conspirator. Appellant asserts that trial counsel was ineffective for failing to object to this language in the charge as it allowed the jury to convict appellant without finding an essential element of first degree murder—the specific intent to kill. Appellant argues that whether one is an accomplice or a co-conspirator is

irrelevant when it comes to the element of specific intent necessary to establish first degree murder. In reviewing appellant's argument we consider both the legal concept known as the "co-conspirator rule" and, the requirement that first degree murder can only be established upon a finding of a deliberate, willful, specific intent to kill.

The general rule of law pertaining to the culpability of conspirators is that each individual member of the conspiracy is criminally responsible for the acts of his co-conspirators committed in furtherance of the conspiracy. *Commonwealth v. Jackson,* 506 Pa. 469, 485 A.2d 1102, 1104 (Pa.1984); *Commonwealth v. Roux,* 465 Pa. 482, 350 A.2d 867 (Pa.1976); *Commonwealth v. Bryant,* 461 Pa. 309, 336 A.2d 300 (Pa.1975); 18 Pa.C.S.§ 903. The co-conspirator rule assigns legal culpability equally to all members of the conspiracy. All co-conspirators are responsible for actions undertaken in furtherance of the conspiracy regardless of their individual knowledge of such actions and regardless of which member of the conspiracy undertook the action. The premise of the rule is that the conspirators have formed together for an unlawful purpose, and thus, they share the intent to commit any acts undertaken in order to achieve that purpose, regardless of whether they actually intended any distinct act undertaken in furtherance of the object of the conspiracy. *Commonwealth v. La,* 433 Pa.Super. 432, 640 A.2d 1336, 1345 (Pa.Super.1994). It is the existence of shared criminal intent that "is the sine qua non of a conspiracy." *Commonwealth v. Schomaker,* 501 Pa. 404, 461 A.2d 1220 (Pa.1983).

Juxtaposed to the co-conspirator rule is the principle that first degree murder is distinguished from all other degrees of murder by the existence of a specific premeditated intent to kill harbored by the accused. *Commonwealth v. Gribble,* 550 Pa. 62, 703 A.2d 426 (Pa.1997); *Commonwealth v. Michael,* 544 Pa. 105, 674 A.2d 1044 (Pa.1996); *Commonwealth v. LaCava,* 542 Pa. 160, 666 A.2d 221 (Pa.1995); *Commonwealth v. Holzer,* 480 Pa. 93, 389 A.2d 101 (Pa.1978); *Commonwealth v. O'Searo,* 466 Pa. 224, 352 A.2d 30 (Pa.1976);

*Commonwealth v. Guida,* 148 A. 501 (Pa.1930); *Commonwealth v. Lacie,* 256 Pa. 526, 100 A. 974 (Pa.1917); *Commonwealth v. Eagan,* 190 Pa. 10, 42 A. 374 (Pa.1899); 18 Pa.C.S. § 2502(a). It is the presence, within the accused, of a fully formed purpose to take a life that must be proven before a conviction for first degree murder can be sustained. *Commonwealth v. Scott,* 284 Pa. 159, 130 A. 317 (Pa.1925).

Illustrating the necessity of finding specific intent to lie within the individual mental state of the accused are this court's opinions in *Commonwealth v. Huffman,* 536 Pa. 196, 638 A.2d 961 (Pa.1994) and *Commonwealth v. Bachert,* 499 Pa. 398, 453 A.2d 931 (Pa.1982). As in the instant case, Huffman and Bachert were each accused of first degree murder as accomplices and/or conspirators. In *Bachert,* the appellant argued that sufficient evidence of his specific intent to kill was not presented, thus, he could not be convicted of first degree murder. This court found that sufficient evidence had been presented. Importantly, in reaching that conclusion the court clarified that accomplices in a killing may possess a shared specific intent to kill, but that each individual accomplice must possess the specific intent to kill in order for that individual to be guilty of murder in the first degree. *Bachert,* at 935. More recently in *Huffman,* this court held that an instruction to the jury was incomplete as it failed to clarify that an individual accused of first degree murder must possess the specific intent to kill whether the accused is the actual shooter, an accomplice or a conspirator. *Huffman,* at 962.

Appellant correctly argues that simple application of the co-conspirator rule to cases of first degree murder would alleviate the Commonwealth's burden of proving an essential element of the crime. If the general rule of co-conspirator liability applied to eliminate the need to establish the existence of specific intent, then an accused conspirator could be culpable for first degree murder without proof that the accused shared the *specific intent to kill,* the element which distinguishes first degree murder from all other forms of homicide. Such a result was clearly not contemplated by the legislature when it delineated the elements distinguishing the various

degrees of homicide. *See* 18 Pa.C.S. §§ 2502(a) and (b). Nor would such a result be consistent with the legal principles outlined in *Bachert* and *Huffman*. To be guilty of first degree murder, each co-conspirator must individually be found to possess the mental state necessary to establish first degree murder—*the specific intent to kill.* It is the unique harboring of malice with willful premeditation that causes first degree murder to be distinctly villainous. It is precisely because of the deliberate nature of first degree murder that this crime carries the most severe penalty the law can impose—death. To allow a conviction for first degree murder to stand without proof beyond a reasonable doubt establishing that the accused actually harbored the specific intent to kill, would be unconscionable. Accordingly, we agree with appellant that the charge as given here was erroneous.

 Having found arguable merit to appellant's initial claim of ineffectiveness we must then assess whether counsel possessed a reasonable trial strategy to forego an objection to the charge as given. A review of the record fails to disclose any reasonable basis for failing to object to the charge on co-conspirator liability. Appellant presented two defensive positions at trial: misidentification and/or lack of evidence connecting appellant to the two unidentified gunmen. Both defenses were intended to distance appellant from any "conspiracy." Without a conspiracy to connect appellant to the actions of the two unidentified gunmen there would be no premise for a conviction of appellant for first degree murder. Given the nature of the defense we can discern no reasonable basis to forego an objection to the charge on co-conspirator liability as to first degree murder.

Finally, we must ascertain whether appellant has suffered prejudice as a result of counsel's failure to object. This burden appellant cannot meet. *Commonwealth v. Howard*, 538 Pa. 86, 645 A.2d 1300 (Pa.1994). A faulty jury charge will require the grant of a new trial only where the charge permitted a finding of guilt without requiring the Commonwealth to establish the critical elements of the crimes charged beyond a reasonable doubt. *See Huffman*, 638 A.2d at 963.

In this case, given the charge as a whole and the evidence as presented, we cannot conclude that this charge alleviated the Commonwealth from it's burden of proving that appellant possessed the specific intent to kill Mr. Rankine. *Commonwealth v. Prosdocimo*, 525 Pa. 147, 578 A.2d 1273 (Pa.1990).

 The conspiracy at issue was a conspiracy to kill Mr. Rankine. A conspiracy to kill presupposes the deliberate premeditated *shared* specific intent to commit murder.[7] *Commonwealth v. Rios*, 546 Pa. 271, 684 A.2d 1025 (Pa.1996). Although each member of a conspiracy must possess the specific intent to kill before a conviction of first degree murder can be sustained, that intent can be demonstrated by circumstantial evidence. *Commonwealth v. Jones*, 542 Pa. 464, 668 A.2d 491, 500 (Pa.1995). Here the evidence established that appellant acted in concert with two unidentified men to kill Kenneth Rankine. Appellant and his two unknown conspirators isolated Mr. Rankine on a street corner late at night. Appellant removed Mr. Hill from the immediate area, leaving Mr. Rankine at the mercy of two armed assassins. Appellant held a gun to Mr. Hill's head. While the two unknown men were engaged in shooting Mr. Rankine, appellant simultaneously attempted to shoot Mr. Hill. After the two assassins unloaded six bullets into Mr. Rankine, three of which struck a vital part of the victim's body, the two men fired at Mr. Hill when Mr. Hill escaped from appellant's grasp. Appellant and his cohorts fled the scene together.

The precise and deliberate actions of appellant and the two unidentified men establish a concerted conscious decision by all three persons to join together with the purpose of taking the life of Mr. Rankine. *Commonwealth v. Cater*, 396 Pa. 172, 152 A.2d 259 (Pa.1959). The actions of each conspirator individually reflect the elements of premeditation and deliberation necessary to prove murder of the first degree. *Rios, supra.*

7. The instant case is distinct from *Huffman,* as in that case the conspiracy at issue was a conspiracy to commit a burglary.

634

The charge as a whole defined the elements of first degree murder so that this jury was adequately apprised of the law it must consider in reaching a decision in this case. *Prosdocimo, supra.* Even with an incorrect instruction on co-conspirator liability, it cannot be said that the verdict in this case would have been different. *Howard, supra.* Unlike the situation in *Huffman,* it cannot be said that this verdict was reached through speculation as to the nature of the conspiracy and the role of the conspirators. In this case, the conspiracy was a conspiracy to kill. The conspiracy had only one object, the deliberate decision to take a life. Once this jury determined that appellant was guilty of conspiracy, given the sole object of that conspiracy, the only logical conclusion to reach is that this jury also determined, beyond a reasonable doubt, that appellant possessed the specific intent to kill. Thus, appellant is entitled to no relief on this issue.

Appellant next argues that it was improper to admit the preliminary hearing testimony of Mr. Hill as appellant was deprived of his right to confront and cross-examine the witness at the preliminary hearing. Prior sworn testimony of a witness is admissible in a later proceeding where the witness is unavailable and the defense has been provided a full opportunity for cross examination. *Commonwealth v. Rodgers,* 472 Pa. 435, 372 A.2d 771 (Pa.1977). Specifically, appellant asserts the ineffectiveness of trial counsel for failing to impeach Mr. Hill regarding pending criminal charges and his prior convictions.[8] Appellant relies on *Commonwealth v. Bazemore,* 531 Pa. 582, 614 A.2d 684 (Pa.1992) for the proposition that he was denied a "full opportunity" to cross-examine the witness due to the ineffectiveness of trial counsel.[9] Appellant's reliance on *Bazemore* is to no avail as *Bazemore* is distinguishable from the case at bar.

In *Bazemore,* this court held that a defendant is denied a full and fair opportunity to cross examine a witness where the

8. Trial counsel did object to the admission of Mr. Hill's preliminary hearing testimony during the argument on the Commonwealth's motion in limine.

9. Trial counsel represented appellant at the preliminary hearing.

defendant is "denied access to vital impeachment evidence at or before the time of the prior proceeding at which that witness testified." *Bazemore*, 614 A.2d at 688. The witness in *Bazemore* had testified at the preliminary hearing and been subject to cross examination. At the time of trial the Commonwealth was unable to locate the witness, thus it moved to admit the testimony from the preliminary hearing on the premise that the witness was unavailable. The defense objected, not as to the determination of availability, but rather to the issue of whether a "full opportunity" to cross-examine the witness had been provided at the preliminary hearing. This objection stemmed from the failure of the Commonwealth to provide to the defense, at or before the preliminary hearing, information in the Commonwealth's possession at the time of the preliminary hearing, that the witness had made a prior inconsistent statement to the police; he had a criminal record; and that he was facing probable indictment on charges of homicide and conspiracy related to the same incident for which Bazemore was charged. This information was clearly relevant to an inquiry of the witness' veracity and bias; the fact that the defense was unable to explore this pertinent area on cross examination led directly to the holding that Bazemore was denied a "full opportunity" to cross examine the witness at the preliminary hearing. Thus in *Bazemore*, the testimony from the preliminary hearing was found inadmissible.

The instant case is distinguishable from *Bazemore*. Appellant herein was provided with information regarding Mr. Hill's first statement to the police and his prior criminal record before the preliminary hearing.[10] Appellant acknowledges that this information regarding Mr. Hill was received but asserts that he was nevertheless denied a full opportunity to cross examine Mr. Hill as counsel failed to utilize this information during his cross examination. Appellant was provided a

10. Appellant asserts that Mr. Hill's F.B.I. record was withheld. The Commonwealth counters that there is no F.B.I. record and the comment regarding it was a misstatement by Detective Norwood. As appellant's sole support for his claim is the comment by Det. Norwood, we must assume that no such record exists.

full opportunity to cross-examine Mr. Hill. Thus, appellant's claim of a *Bazemore* violation is without merit.

■ As to appellant's interwoven allegation that counsel was ineffective for failing to impeach Mr. Hill with the information from his prior statement and criminal record, we find appellant is not entitled to relief on this basis. Counsel did thoroughly explore Mr. Hill's identification of appellant on cross-examination. Counsel also vigorously questioned Mr. Hill regarding any connection between appellant and the two unidentified men. Mr. Hill could not testify to any direct connection between appellant and the two unidentified men. Although counsel did not pursue other avenues of cross-examination regarding Mr. Hill's prior statement and his criminal record, appellant fails to indicate if there were any inconsistencies in the prior statement which would have been relevant, and he fails to indicate if the prior record involved crimes of a crimen falsi nature which would have provided a basis for impeachment. Appellant's assertion that the mere absence of questioning along these lines equals ineffective representation, without any elucidation of how the absence of such questioning worked to appellant's disadvantage does not present a claim of arguable merit.

■ In a related issue, appellant asserts that the testimony of Mr. Hill should not have been admitted as the Commonwealth failed to make a "good faith" effort to locate the witness.[11] Where the Commonwealth seeks to admit a missing witness's prior recorded testimony, a "good faith" effort to locate the witness must be established. *Commonwealth v. Jackson,* 463 Pa. 301, 344 A.2d 842 (Pa.1975). What constitutes a "good faith" effort is a matter left to the discretion of the trial court. *Id.*

■ In the instant case the Commonwealth presented the testimony of Detective Norwood who detailed her efforts to locate Mr. Hill. The detective contacted an attorney represent-

11. This issue is not raised as ineffectiveness of counsel as trial counsel did make an objection on this ground during the argument on the Commonwealth's Motion in Limine.

ing Mr. Hill on another case and was informed that Mr. Hill had failed to appear for a scheduled court appearance. A search of Mr. Hill's last known address was made to no avail. The address listed on his driver's license and on car registrations were also checked to no avail. Family members were contacted who informed the detective that Mr. Hill had returned to his native Jamaica. Ms. Brown, a cousin of Mr. Hill told the detective that she had recently seen Mr. Hill in Jamaica.

Appellant does not contest the thoroughness of the Commonwealth's efforts to locate Mr. Hill. Rather appellant argues that these efforts should have begun more than four days prior to appellant's trial. Appellant argues that the Commonwealth knew that Mr. Hill might not be available, thus they were under an obligation to act with greater tenacity in securing his presence. The Commonwealth is held to making a reasonable effort to secure the witness's presence, not to being omniscient regarding the potential for a witness to leave the jurisdiction. *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (Pa.1975). Appellant's argument is without merit.

Appellant next argues that counsel was ineffective for failing to object to the testimony of Ms. Madeline Ruiz, as her testimony was irrelevant. The admissibility of evidence is a matter addressed solely to the discretion of the trial court and may be reversed only upon a showing that the court abused its discretion. *Commonwealth v. Claypool*, 508 Pa. 198, 495 A.2d 176, 178 (Pa.1985). Evidence is considered relevant if it logically tends to establish a material fact at issue, or tends to make an inference more probable than it would be without the evidence. *Commonwealth v. LaCava*, 542 Pa. 160, 666 A.2d 221, 228 (Pa.1995).

A critical issue at trial was the identification of appellant. Ms. Brown and Mr. Hill both testified that on the night of the shooting appellant had a distinctive gold tooth. At the preliminary hearing Mr. Hill acknowledged that appellant did not have a gold tooth, yet Mr. Hill was still certain as to his identification of appellant. Ms. Brown testified similarly at

trial. Counsel for appellant caused appellant to display his teeth before the jury to affirm that appellant did not have a gold tooth.

The Commonwealth called Ms. Ruiz as a witness. Ms. Ruiz testified that she worked as a salesperson for Gold Castle jewelry store at 1114 Chestnut Street in Philadelphia. Ms. Ruiz identified a gold tooth cap, which is sold as jewelry in her establishment. Ms. Ruiz testified that the gold tooth cap was a common accessory that could be slipped on and off a tooth, and sold for $30 to $40.

Appellant argues that the testimony of Ms. Ruiz was irrelevant and thus, counsel was ineffective for failing to object. The testimony of Ms. Ruiz was relevant as it went to appellant's claim that Ms. Brown and Mr. Hill were mistaken in their identification of appellant. The testimony made the inference that appellant did have a gold tooth on the night of the shooting more probable. *LaCava, supra.* As the testimony was relevant an objection by counsel would not have been sustained. Accordingly, counsel cannot be found ineffective for failing to raise a meritless objection. *Commonwealth v. Tilley,* 528 Pa. 125, 595 A.2d 575 (Pa.1991).[12]

Appellant next argues that the closing argument of the prosecutor was unduly prejudicial and counsel was ineffective for failing to object. As this court stated in *Commonwealth v. Johnson,* 516 Pa. 527, 533 A.2d 994, 997 (Pa. 1987), *quoting, Commonwealth v. Stoltzfus,* 462 Pa. 43, 337 A.2d 873, 882 (Pa.1975), to merit relief on a claim of prosecutorial misconduct in the closing argument appellant must demonstrate that the language was "such that its 'unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence and render a true verdict.'" The prosecutor may fairly comment on the evidence and may also respond to arguments made by the defense. *Common-*

12. The trial court did give a cautionary instruction regarding this testimony. The trial court instructed the jury to remember that no testimony had been presented that appellant had purchased a gold tooth cap. T.T., May 25, 1995 p. 11.

*wealth v. Hardcastle,* 519 Pa. 236, 546 A.2d 1101 (Pa.1988); *cert. denied,* 493 U.S. 1093, 110 S.Ct. 1169, 107 L.Ed.2d 1072 (1990).

Appellant takes offense at what he terms the prosecutor's inference in his closing that appellant was involved in a world of drugs. In actuality what the prosecutor argued in his closing was that the victims, Mr. Rankine and Mr. Hill were known drug dealers. This was a theme appellant relied upon heavily in his defense that Mr. Rankine was the victim of a drug war shoot-out with the two unknown men, which appellant merely happened upon by coincidence. The prosecutor's reference to a world of drugs was certainly not unduly prejudicial as it was a fair comment on the evidence presented and a proper line of response to appellant's assertions that the other parties were all involved in drugs and he was a mere bystander, arriving at the scene simultaneously with the two unknown gunmen by accident. Given the evidence presented at trial the prosecutor's reference to a world of drugs was not unduly prejudicial.

Appellant also claims counsel was ineffective for opening the door to permit the prosecutor to argue in his closing that Mr. Hill was afraid of appellant. Appellant does not dispute that the comments were fair response, rather he asserts that his attorney was ineffective for making the original argument, which prompted the response. The point revolves around a defense strategy that appellant was wrongly accused because Mr. Hill was afraid to name the two unknown shooters, thus, he identified appellant to protect himself from retribution by the two unknown men. In response to this strategy the prosecutor argued that perhaps Mr. Hill was afraid of appellant. The prosecutor's comment was not unduly prejudicial, and trial counsel did not open a door to an inflammatory response. Thus, counsel was not ineffective for failing to object to the reference to a world of drugs, or for allowing a reference to Mr. Hill's potential fear of appellant. *Tilley, supra.*

■ Next appellant raises an objection to the charge given by the court at the penalty phase as to the proper burden of proof and the unanimity requirements as to mitigating circumstances. Again appellant argues that counsel was ineffective for failing to object to the erroneous charge. The record belies this argument where the trial court charged the jury as follows:

On the other hand, the Defendant has the burden of proving any mitigating circumstances, but he only has to prove it by a preponderance of the evidence. That is, by the greater weight of the evidence. If you consider any evidence concerning a mitigating circumstance and you find and put everything on one side of the scale and it shows mitigating circumstances and everything on the other side and you say it would be against that, if the scale is perfectly balanced, then the Defendant has not met his burden of proving by preponderance of the evidence.

If the scale tips to any degree whatsoever in favor of the mitigating circumstances than you will find there is a mitigating circumstance . . . .

Now, with regard to the mitigating circumstances, you will see in a few moments that there is a place to list those on this sheet. Any one member of the jury can find a mitigating circumstance, even if the others don't agree to it. So you can find one or more, as many as any member of the jury wants. Doesn't have to be unanimous.

T.T., May 26, 1995 29–30.

As the above language sets forth the proper instruction as to the burden of proof and the unanimity requirements regarding mitigating circumstances, appellant's allegation of error is of no merit. As the claim is of no merit, counsel cannot be ineffective for failing to object. *Tilley, supra.*

■ Next appellant argues that the verdict of death must be set aside as the jury found an aggravating circumstance that was not enumerated by the sentencing code.[13] The jury

13. Appellant does not raise this issue as ineffective assistance of counsel. Nor was this issue preserved below as counsel made no objection

was presented with evidence of only one aggravating factor, that the defendant had been convicted of another murder, committed either before or at the time of the offense at issue. 42 Pa.C.S. § 9711(d)(11). When the foreperson of the jury announced the verdict she stated the aggravating circumstance found as: "The defendant has been convicted of another *crime* committed either before or at the time of the offense at issue." Appellant argues that use of the word "crime" as opposed to "murder" constituted the finding by the jury of an aggravating circumstance not contemplated by the sentencing code, and thus, a new penalty hearing is required. Appellant's claim is wholly without merit. The verdict slip signed by the foreperson sets forth the aggravating circumstance as found by the jury "the defendant has been convicted of another murder, committed either before or at the time of the offense at issue." The foreperson's verbal statement was clearly a slip of the tongue and not fatal to the validity of the verdict.

 Appellant next raises the ineffectiveness of counsel in failing to file a pre-trial motion to suppress the identification testimony of Jacqueline Brown. As stated above Ms. Brown testified that she was present on the night Mr. Rankine was murdered and she positively identified appellant. Appellant raises the suggestiveness of Ms. Brown's photo identification of appellant on the night of the murder and her insistence that appellant had a gold tooth as support for his argument that a pre-trial motion to suppress Ms. Brown's testimony should have been litigated. Appellant avers that the failure to litigate such a motion was unduly prejudicial as it resulted in the presentation of Ms. Brown's testimony to the jury.

 The fact that Ms. Brown identified appellant and thus caused prejudice to him is not justification for a pre-trial motion to suppress. Failure to file a motion to suppress will be ineffectiveness where such motion is of arguable merit.

which would have included this allegation. However, as this court applies a relaxed waiver standard to permit review of all issues raised on direct appeal in capital cases we will address the merits of the claim. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (Pa.1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983).

Here appellant fails to discuss the merits of his desired motion, he refers only to the prejudice caused by Ms. Brown's identification. Prejudice by eyewitness testimony does not, however automatically create a basis for suppression. Appellant bears the burden of proof as to his claim that counsel had a basis for seeking suppression of Ms. Brown's identification testimony that counsel failed to pursue. Without more to support appellant's claim than a recitation of boilerplate language we cannot find counsel's failure to litigate a meritless motion to suppress constitutes ineffective assistance. *Tilley, supra.*[14]

Next appellant asserts the ineffectiveness of counsel for failing to interview and call certain witnesses. Where a claim is made of counsel's ineffectiveness for failing to call witnesses, it is the appellant's burden to show that the witness existed and was available; counsel was aware of, or had a duty to know of the witness; the witness was willing and able to appear; and the proposed testimony was necessary in order to avoid prejudice to the appellant. *Commonwealth v. Morris,* 546 Pa. 296, 684 A.2d 1037, 1044 (Pa.1996).

In support of this claim appellant attaches an affidavit of Mr. Hans Schneiber to his reproduced record. (R.R. p. 44a). In the affidavit Mr. Schneiber states that appellant was in his home on the night of the murder from 8:00 p.m. until well after midnight. Mr. Schneiber states that he was willing and available to testify to this alibi and that he attempted unsuccessfully to contact counsel. Mr. Schneiber could not recall counsel's name nor did he remember any details regarding his phone call to an office where he thought counsel could be reached. Appellant establishes three of the four elements of *Morris:* the witness existed and was available, the witness was willing to appear, and the proposed testimony was necessary to avoid prejudice to appellant. However, appellant fails

14. We note that a review of the record shows that trial counsel vigorously cross-examined Ms. Brown as to the suggestiveness of the photo identification, and her insistence that appellant had a gold tooth on the night of the murder. Thus, the very issues appellant wanted to explore in the motion to suppress were thoroughly explored at trial.

to establish that counsel knew or should have known of the existence of Mr. Schneiber.

The record belies any such knowledge on the part of trial counsel. Prior to the start of trial the court heard appellant's request for a continuance on the basis that more time was needed for pre-trial preparation, as he and counsel had four days earlier completed another trial. Before denying the motion the court questioned appellant and counsel as to any specific needs that were not addressed due to the back to back trials. Appellant posited a general request for more time and failed to specify any missing discovery or witnesses. T.T., May 23, 1995 pp. 70–73. Also, at penalty phase counsel made clear on the record his attempts to secure witnesses for appellant, to the extent that counsel personally offered to pay the plane fare and arrange free lodgings for appellant's mother to come in from Florida and testify. Appellant's mother declined counsel's offer. T.T., May 26, 1995 pp. 3–5.

Given the statements of record regarding pre-trial preparation and trial counsel's efforts to secure witnesses on behalf of appellant, appellant fails to meet his burden of proof that counsel knew of the existence of Mr. Schneiber and failed to call him as a witness. Mr. Schneiber's vague statements as to an attempt to contact counsel are suspicious given counsel's vigorous attempts to locate witnesses for appellant. Thus, appellant's claim of counsel's ineffectiveness for failing to call a witness is without merit. *Morris.*

 Appellant next claims ineffectiveness of trial counsel for counsel's action in telling the jury that John Wayne was an alias and appellant's real name is Leroy Thomas. Appellant argues that reference to the use of an alias creates the inference of prior criminality and is ineffectiveness per se. Contrary to appellant's assertion counsel's action in revealing appellant's name was designed to effectuate appellant's interest. Counsel informed the jury that appellant's name was Leroy Thomas and not John Wayne in an effort to demonstrate that appellant was the subject of misidentification and to underscore his defense that the Commonwealth was prose-

cuting the wrong man. Nor can appellant demonstrate prejudice from this tactic as it was clearly an attempt to thwart any use of evidence of an alias by the prosecution. Thus, counsel cannot be ineffective per se for revealing this information. *Tilley, supra.*

Appellant claims counsel was ineffective for failing to request a continuance of the trial, and/or of the penalty phase hearing. As stated previously herein, appellant directly requested a continuance of trial. This request was considered and denied. Appellant now asserts that a continuance was needed to procure expert ballistics testimony to counter the testimony of Officer O'Hara regarding Mr. Rankine's gun. The mere failure to obtain an expert rebuttal witness is not ineffectiveness. Appellant must demonstrate that an expert witness was available who would have offered testimony designed to advance appellant's cause. *Commonwealth v. Williams*, 537 Pa. 1, 640 A.2d 1251 (Pa.1994). This appellant makes no attempt to do, thus, counsel cannot be deemed ineffective for failing to request a continuance on an unsupported pretext.

As for failure to request a continuance of the penalty phase, appellant asserts the failure of trial counsel to obtain witnesses. We reference our earlier discussion of counsel's efforts to procure sympathetic witnesses even at his own expense as an indication of the meritlessness of this assertion. In his comments reflecting the refusal of appellant's mother to come to Philadelphia counsel noted that she had also refused to attend the previous trial. T.T., May 26, 1995 pp. 3–5. As counsel was unable to obtain any witnesses prior to the instant trial it seems unlikely that additional time would have altered this situation. Contrary to appellant's assertion counsel was not ineffective in failing to seek/obtain continuances of the trial and/or penalty hearing.

Appellant's final claim of error is that counsel was ineffective for failing to request the appropriate mitigating circumstances at the penalty phase hearing. Counsel presented and argued one mitigating circumstance: "any other evidence of

mitigation concerning the character and record of the defendant and the circumstances of the defense." 42 Pa.C.S. § 9711(e)(8). Appellant argues that counsel should also have presented argument as to three following mitigating factors:

(1) the defendant has no significant history of prior criminal convictions.

(4) the age of the defendant at the time of the crime.

(7) the defendant's participation in the homicidal act was relatively minor.

42 Pa.C.S. 9711(e)(1),(4) and (7).

 ▆ Appellant argues as to each of the proffered mitigating factors that he had no significant history of prior criminal convictions, only one prior murder; that he was only 27 years of age at the time of this murder and that he was a minor player in that he merely distracted Mr. Hill while the other two men fired the fatal shots at Mr. Rankine. Appellant's argument borders the absurd. Granted appellant had only one prior conviction, however, as the conviction was for murder counsel wisely chose not to emphasize that fact by avoiding a debate over whether one prior murder constitutes a "significant" history of prior criminal convictions. As for appellant's age, 27 is neither youthful nor elderly, counsel had no reason to present this as a consideration for the jury. *Commonwealth v. Rivers*, 537 Pa. 394, 644 A.2d 710 (Pa.1994), *cert. denied*, 516 U.S. 1175, 116 S.Ct. 1270, 134 L.Ed.2d 217 (1996). Merely because appellant did not fire the fatal shots that ended Mr. Rankine's life does not mean that he played a minor role in the murder. For counsel to have offered this as a mitigating factor would have invited rebuttal as to the absurdity of such a position. When a person enters into a conspiracy to commit murder the actual infliction of the fatal blow is irrelevant. *Jones, supra.* As there is no merit to appellant's claims that additional mitigation factors should have been presented counsel cannot be found ineffective for failing to pursue said claims. *Tilley, supra.*

Finally, in accordance with our statutory duty, 42 Pa.C.S. § 9711(h)(3), this court must affirm the sentence of death unless we determine that:

(i) the sentence of death was the product of passion prejudice or any other arbitrary factor;

(ii) the evidence fails to support the finding of at least one aggravating circumstance specified in subsection (d); or

(iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.

 Upon our review of the record it is clear that the sentence imposed was not a product of passion, prejudice or any other arbitrary factor. We further find that the evidence was sufficient to establish the aggravating factor found by the jury. The jury found one aggravating factor, that the defendant had been convicted of another murder committed either before or at the time of the crime at issue. 42 Pa.C.S. § 9711(d)(11). In addition, after reviewing the information compiled by our Administrative Office, the circumstances of the crime, and the character and record of appellant, in accordance with the requirements set forth in *Commonwealth v. Frey*, 504 Pa. 428, 475 A.2d 700 (Pa.1984), *cert. denied*, 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984), we do not find the sentence imposed upon this defendant to be disproportionate to the sentence imposed upon defendants in similar cases.[15] Accordingly, for the reasons as set forth herein, the judgment of sentence of death must be affirmed.[16]

NIGRO, J., files a concurring opinion.

15. Subsection (h)(3)(iii) of 42 Pa.C.S. § 9711 has been amended to delete the requirement for a proportionality review effective June 25, 1997. However, as the defendant herein was convicted and sentenced prior to the amendment, a proportionality review is mandated. *Commonwealth v. Gribble*, 550 Pa. 62, 703 A.2d 426 (Pa.1997).

16. The Prothonotary of the Supreme Court is directed to transmit the full and complete record of this case to the Governor forthwith. 42 Pa.C.S. § 9711(i).

NIGRO, Justice, concurring.

While I join the Majority's opinion, I write separately to note that I would have also addressed, pursuant to the relaxed waiver rule applicable to direct appeals in capital cases, Appellant's distinct claim that the trial court erred in charging the jury regarding conspiracy liability as it relates to first degree murder. *See Commonwealth v. Zettlemoyer,* 500 Pa. 16, 50 n. 19, 454 A.2d 937, 955 n. 19 (1982) (under this Court's practice of relaxing waiver rules in death penalty cases, "significant issues perceived *sua sponte* by this Court, or raised by the parties, will be addressed and, if possible from the record, resolved"). Appellant raises this claim of underlying error by the trial court in addition to his claim that counsel was ineffective for failing to object to the charge given by the trial court on conspiracy liability. The Majority addressed only the ineffectiveness claim.

When reviewing Appellant's claim that trial counsel was ineffective for failing to object to the charge on conspiracy liability, the Majority agreed with Appellant that the instruction was erroneous but found that it had not prejudiced Appellant. I agree with this analysis. However, for purposes of reviewing Appellant's underlying claim of trial court error, I would also find that such error was harmless, given the circumstances of this case, the trial court's charge to the jury when read as a whole, and most significantly, the jury's conviction of Appellant for conspiring to kill Mr. Rankine. Thus, in addition to the Majority's conclusion that Appellant's ineffectiveness claim fails, I would also find that Appellant is not entitled to relief on the basis of the trial court's improper instruction on co-conspirator liability.[1]

---

1. Likewise, Appellant raises several other underlying claims of trial court error and prosecutorial misconduct and in the alternative, claims that trial counsel was ineffective for failing to object to these alleged errors committed by the trial court or by the prosecutor. While the Majority addresses the merits of some of the underlying claims of error while examining others only as ineffectiveness claims, I would have independently addressed all of Appellant's distinct claims of trial court error in light of this Court's relaxed waiver rule. However, since I agree with the Majority that these claims are without merit, Appellant

would not be entitled to relief on the basis of these claims under either analysis.