**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LORI TRESSLER | : | |
| | : | |
| Appellant | : | No. 704 WDA 2023 |

Appeal from the PCRA Order Entered May 18, 2023
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0000011-2016

BEFORE: PANELLA, P.J.E., KING, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:          **FILED: March 7, 2024**

Appellant, Lori Tressler, appeals from the post-conviction court's May 18, 2023 order denying her timely-filed petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. Appellant raises two claims of trial counsel's ineffectiveness. After careful review, we affirm.

The PCRA court summarized the facts underlying Appellant's convictions, as follows:

> On the evening of August 21, 2015, [Appellant's] cousin, Armando Friend; [Appellant's] son, Jeffrey Tressler; and a few more of Mr. Tressler's friends were present outside the residence [that Appellant] shared with Robert Engle.
>
> Mr. Engle and [Appellant] returned home in their vehicle after drinking with their friend. Mr. Engle was upset because Mr. Tressler had parked in the wrong spot, and he began using his vehicle to try to push Mr. Tressler's out of position. He then exited his vehicle and, by some witness accounts, became abrasive toward Mr. Tressler and his friends, yelling at several people. He also scuffled with [Appellant], eventually throwing her to the ground. As Mr. Tressler testified at trial, [Appellant] then said, "You're done mother F'er." N.T. … Trial…, 4/2/19[,] at 230.

[Appellant] then ran towards the house. Mr. Friend saw her go inside, and he heard her say, "I'm gonna stab the son of a bitch." *Id.* at 107. He then saw her come back out of the house with a knife in her hand.

Mr. Tressler testified that he also saw [Appellant] come out of the house and stand within a foot of the victim. "I saw her stab him in the chest with a knife. Hard enough that I heard her fist connect and make a smacking sound off of his chest." *Id.* at 231. He and his friends were just finishing changing a tire on their vehicle at the time, and they then got in their car and took off. Mr. Tressler testified that he had seen his mother stab Mr. Engle on multiple occasions in the past[,] "too many times to honestly count how many." *Id.* at 238. The latest incident he could remember was from 2009, which he recounted in testimony:

> … [M]y mom grabbed a knife and she stabbed Robert in the chest a couple different times. It might've all been in the chest, but she lunged towards him with a knife multiple times. The only one I remember seeing is the one plunged [into] his chest.

N.T. … Trial…, 4/3/19[,] at 6-7.

Evidence recovered from the scene included a kitchen knife, a survival knife, and the victim's clothing. Dr. Cyril Wecht testified at trial as an expert witness in the field of forensic pathology. He described the stab wound as going through Mr. Engle's chest wall into his heart, which produced a substantial amount of blood and caused his death. Expert testimony in the fields of serology and DNA forensics was that Mr. Engle's blood was on the blade of the kitchen knife, and [Appellant's] DNA was on the handle of that knife. No blood was found on the blade of the survival knife recovered from the scene.

PCRA Court Opinion (PCO), 5/18/23, at 2-4 (footnote omitted).

Following a jury trial in April of 2019, Appellant was convicted of third-degree murder. She was sentenced on May 31, 2019, to a term of 20 to 40 years' incarceration. This Court affirmed Appellant's judgment of sentence on July 8, 2020. *See Commonwealth v. Tressler*, 239 A.3d 59 (Pa. Super.

2020) (unpublished memorandum). Appellant did not file a petition for permission to appeal to our Supreme Court.

On April 15, 2021, Appellant filed a timely, *pro se* PCRA petition. Due to the appointment and withdrawal of several attorneys, and requests for extensions of time by Appellant's current counsel, Appellant did not file an amended petition until August 29, 2022. Therein, she alleged, *inter alia*, that her trial counsel, Shane Gannon, Esq., acted ineffectively by not presenting expert testimony concerning her mental health, allegedly suffering from battered woman syndrome (discussed in further detail, *infra*), history of alcohol abuse, and a head injury she suffered impacting her brain function. Appellant also alleged that counsel acted ineffectively by not discussing with her, in a way that she could understand, whether she should testify at trial.[1]

The PCRA court conducted an evidentiary hearing on February 27, 2023. On May 18, 2023, the court issued an order and opinion denying Appellant's

---

[1] We mention that Appellant was represented by several attorneys during the pretrial and trial phases of her case. Specifically, Robert Harper, Esq., represented Appellant in pretrial proceedings, and testified at the PCRA hearing. Mike Garofalo, Esq., also represented Appellant prior to trial, but he was not called to testify at the PCRA hearing. Additionally, Attorney Gannon represented Appellant prior to, and during, her trial. He testified at the PCRA hearing. On appeal, Appellant cursorily claims that Attorney Harper "did not respond to her communications[,]" and that Attorney Garofalo "screamed at her" and "threatened [that] if she did not take [a] plea [deal], she would spend the rest of her life in prison." Appellant's Brief at 10, 11. However, her ineffectiveness claims regarding counsel's failure to call expert witnesses, and advice regarding her decision whether to testify, relate primarily to Attorney Gannon's representation. Thus, our discussion of Appellant's issues will focus on Attorney Gannon's representation, as well.

petition. She filed a timely notice of appeal, and she complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The court subsequently filed a statement indicating it was relying on the rationale set forth in its May 18, 2023 opinion.

Herein, Appellant presents two issues for our review:

1. Whether trial counsel should have presented expert testimony to assess whether the following long-term issues had any effect on … Appellant's state of mind on the night of the stabbing:

   A). … Appellant's mental health and long[] history of alcohol abuse;

   B). Past serious head injury;

   C). Battered Woman Syndrome.

2. Whether trial counsel adequately and, in a manner … Appellant could understand, and, without his own personal opinion, discuss[ed] whether … Appellant should testify at trial?

Appellant's Brief at 4 (unnecessary capitalization omitted).

"This Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." *Commonwealth v. Morales*, 701 A.2d 516, 520 (Pa. 1997) (citing *Commonwealth v. Travaglia*, 661 A.2d 352, 356 n.4 (Pa. 1995)). Where, as here, a petitioner claims that he or she received ineffective assistance of counsel, our Supreme Court has directed that the following standards apply:

[A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the

- 4 -

circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." [*Commonwealth v.*] *Colavita*, … 993 A.2d [874,] 886 [(Pa. 2010)] (citing *Strickland* [*v. Washington*, 466 U.S. 668 … (1984)]). In Pennsylvania, we have refined the *Strickland* performance and prejudice test into a three-part inquiry. *See* [*Commonwealth v.*] *Pierce*, [527 A.2d 973 (Pa. 1987)]. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. *Commonwealth v. Ali*, … 10 A.3d 282, 291 (Pa. 2010). "If a petitioner fails to prove any of these prongs, his claim fails." *Commonwealth v. Simpson*, … 66 A.3d 253, 260 ([Pa.] 2013) (citation omitted). Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. *See Ali*, *supra.* Where matters of strategy and tactics are concerned, "a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Colavita*, … 993 A.2d at 887 (quotation and quotation marks omitted). To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Commonwealth v. King*, … 57 A.3d 607, 613 ([Pa.] 2012) (quotation, quotation marks, and citation omitted). "'[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.'" *Ali*, … 10 A.3d at 291 (quoting *Commonwealth v. Collins*, … 957 A.2d 237, 244 ([Pa.] 2008) (citing *Strickland*, 466 U.S. at 694….)).

*Commonwealth v. Spotz*, 84 A.3d 294, 311-12 (Pa. 2014).

Appellant first argues that her trial counsel was ineffective for not exploring and presenting expert testimony regarding her mental health issues, alcohol abuse, a severe head injury she suffered, and her potentially suffering

from battered woman syndrome. According to Appellant, counsel was aware of these issues, yet "*no* attempts were made to secure a helpful expert to address" how they "could have or would have affected her behavior on the night of the stabbing." Appellant's Brief at 12 (emphasis in original). For instance, Appellant claims that Attorney Gannon testified at the PCRA hearing "that he considered a battered woman syndrome defense…[,] but, because Appellant would not say that she 'did it, that she committed the crime[,]'" *id.* at 11, counsel "failed to seek out any type of expert or even attempt to secure an expert because … Appellant would not testify or admit that she stabbed Engle." *Id.* at 14. She also stresses that counsel testified that he "would have reviewed" a report from Torrance State Hospital, where Appellant was a patient for three months prior to trial to evaluate her competency, "yet there is no indication that [counsel] made [any] attempt to seek *helpful* expert medical/psychiatric testimony/opinion or even investigate the possibility of helpful testimony" stemming from that report. *Id.* (emphasis in original).

No relief is due. Notably, Appellant did not identify, or call at the PCRA hearing, any expert witness who would have been available and willing to testify at her trial regarding any of these issues. It is well-settled that,

> "[w]here a claim is made of counsel's ineffectiveness for failing to call witnesses, it is the appellant's burden to show that the witness existed and was available; counsel was aware of, or had a duty to know of the witness; the witness was willing and able to appear; and the proposed testimony was necessary in order to avoid prejudice to the appellant." *Commonwealth v. Wayne*, … 720 A.2d 456, 470 ([Pa.] 1998). "The mere failure to obtain an expert rebuttal witness is not ineffectiveness. *[The a]ppellant must demonstrate that an expert witness was available who*

> ***would have offered testimony designed to advance [the] appellant's cause****.*** ***Id.*** at 470–71. "Trial counsel need not introduce expert testimony on his client's behalf if he is able effectively to cross-examine prosecution witnesses and elicit helpful testimony. Additionally, trial counsel will not be deemed ineffective for failing to call a medical, forensic, or scientific expert merely to critically evaluate expert testimony [that] was presented by the prosecution. Thus, the question becomes whether or not [defense counsel] effectively cross-examined [the Commonwealth's expert witness]." ***Commonwealth v. Marinelli***, … 810 A.2d 1257, 1269 ([Pa.] 2002) (citations and quotation marks omitted).

***Commonwealth v. Chmiel***, 30 A.3d 1111, 1143 (Pa. 2011) (emphasis added).

Here, Appellant makes no argument that counsel acted ineffectively in cross-examining the Commonwealth's expert witness(es) in this case, and she also has not demonstrated that any expert witness was available and willing to offer testimony supporting her defense. Indeed, Appellant does not even speculate on what testimony any expert ***might*** have offered or how it could have benefited her defense. For instance, Appellant clearly had/has the report from Torrance State Hospital, yet she fails to identify any information contained therein that might have possibly helped her defense. She also does not offer any theories on how her mental health issues, her history of alcohol abuse, or the head injury she suffered could have been utilized in her defense. Thus, she has not established that her counsel acted ineffectively by not calling expert witness(es) to opine on these issues.

In regard to Appellant's claim that counsel should have called an expert to testify that she suffered from battered woman syndrome, that claim also

fails because, as Attorney Gannon testified, Appellant refused to admit that she stabbed the victim. Our Supreme Court has explained:

> A battered woman is a woman who is repeatedly subjected to any forceful physical or psychological behavior by a man in order to coerce her to do something he wants her to do without any concern for her rights. Battered women have been compared to hostages, prisoners of war, and concentration camp victims, and the battered woman syndrome is recognized as a post-traumatic stress disorder.

*Commonwealth v. Stonehouse*, 555 A.2d 772, 783 (Pa. 1989). "Because the battered woman syndrome is not within the ordinary training, knowledge, intelligence and experience of jurors, … expert testimony regarding battered women is admissible as the basis for proving justification in the use of deadly force where the defendant has been shown to be a victim of psychological and physical abuse." *Id.* at 782-83. Notably, this Court has explained that "expert testimony regarding" battered woman syndrome "is admissible as probative evidence of the defendant's state of mind *as it relates to a theory of self-defense*." *Commonwealth v. Miller*, 634 A.2d 614, 621–22 (Pa. Super. 1993) (*en banc*) (emphasis added). "The syndrome does not represent a defense to homicide in and of itself, but rather, is a type of evidence which may be introduced on the question of the reasonable belief requirement of self-defense in cases which involve a history of abuse between the victim and the defendant." *Id.* at 622.

Here, Appellant could not present a claim of self-defense premised on the battered woman syndrome because she refused to admit that she stabbed the victim. As Attorney Gannon explained at the PCRA hearing, he "told

[Appellant that] if this [(the stabbing)] is something [she] did and there's a history of abuse, that is something [the defense] could petition to bring in as evidence and possibly even retain an expert to testify as to [her] mental state when the incident occurred." N.T. PCRA Hearing, 2/27/23, at 70. Counsel testified that Appellant **refused** to pursue this strategy, claiming that "[s]he wouldn't say that she did it, that she committed the crime." **Id.** This testimony demonstrates that Attorney Gannon raised the possibility of a defense premised on the battered woman syndrome, correctly explained to Appellant that she would have to admit she stabbed the victim to pursue this defense, and Appellant refused to do so. Thus, counsel did not act ineffectively. Appellant's first issue is meritless.

Appellant next argues that Attorney Gannon was ineffective for not adequately explaining to her the consequences of her decision not to testify. Appellant's argument in support of this claim is extremely confusing. From what we can discern, she seemingly contends that Attorney Gannon failed to inform her that if she chose not to testify, he would not present any "expert or helpful evidence" on her behalf and, instead, he would raise the "unreasonable" defense "that another person committed the crime...." Appellant's Brief at 18.

Appellant's argument is unconvincing. At the PCRA hearing, Attorney Gannon testified that he discussed with Appellant her decision of whether to testify "probably … 10 to 15 times … before trial." PCRA Hearing at 69. Counsel further explained that he "was adamant that [he] would[ have]

preferred her to testify and [they] went over that countless times. But she indicated she couldn't remember anything." *Id.* Attorney Gannon believed that Appellant "understood her options … about whether or not to testify" and she asked questions about testifying that indicated "[s]he understood what [they] were discussing…." *Id.* at 69, 70. Counsel did not believe Appellant was confused about her decision not to testify, and he believed that she did not want to do so simply because "[s]he just couldn't recall what happened that night." *Id.* at 70, 71. Counsel stated that it was "absolutely her decision" not to testify. *Id.* at 73. At no point did counsel indicate that he believed, or that he told Appellant, that her not testifying would preclude him from presenting any expert witnesses or 'helpful evidence' on Appellant's behalf.

However, it is correct that, because Appellant refused to say that she committed the crime, Attorney Gannon was limited in the possible defenses he could pursue on her behalf. As the PCRA court explained in its opinion:

> Although it is certainly true that no defendant is required to testify or to confess to a crime, it is also true that a defendant's choice to invoke that right may preclude certain avenues of defense. As it was, [Appellant] chose not to testify, disavowed any memory of what happened, and did not admit that she stabbed Mr. Engle. Her counsel therefore had to develop a strategy accordingly. If counsel had attempted to introduce evidence that [Appellant's] background or physical, mental, and psychological conditions somehow influenced or explained her actions, this would have implied that [Appellant] acted – *i.e.*, that she stabbed the victim. Even if the evidence were only to show that her background or other factors influenced her memory of events, this could still imply that [Appellant] was the actor. As it was, the defense theory at trial was that one of [Appellant's] friends had stabbed the victim, an approach that avoided any implication that [Appellant] was the actor.

- 10 -

PCO at 10-13.

The PCRA court found counsel's strategy reasonable, given the circumstances of the case. We agree. Appellant does not dispute that she did not wish to testify. *See* Appellant's Brief at 18 ("Here, … Appellant did not want to testify because she couldn't remember what happened."). To the extent that she claims Attorney Gannon pursued an unreasonable defense simply because she chose not to testify, the record belies that claim. Instead, counsel reasonably decided to argue that someone else committed the crime because Appellant refused to admit that she stabbed the victim. Without Appellant's admitting she stabbed the victim, she could not pursue certain defenses, including battered woman syndrome. Therefore, Appellant has failed to demonstrate that her trial counsel acted ineffectively in advising her to testify, in telling her that there would be 'consequences' if she did not do so, or in pursuing a defense that someone else committed the crime when Appellant decided not to take the stand.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary


DATE:  3/7/2024