J-S15007-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMAL ALI | |
| Appellant | No. 859 EDA 2017 |

Appeal from the PCRA Order entered February 14, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0000070-2010

BEFORE:  STABILE, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY STABILE, J.:                **FILED JUNE 25, 2018**

Appellant, Jamil Ali, appeals *pro se* from the February 14, 2017 order entered in the Court of Common Pleas of Philadelphia County, denying his petition for collateral relief filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  Following careful review, we affirm.

This Court previously adopted the trial court's factual summary of this case as follows:

> At approximately 10 p.m., on June 8th, 2009, the victim herein, Rasheed Rose entered the New Hot Spot Bar on the corner of 21st and Gerritt Streets in West Philadelphia.  Shortly after arriving at the bar, Mr. Rose stepped outside to make a phone call on his cell phone.  As he was having this phone conversation, Mr. Rose was approached by [Appellant].  [Appellant] drew a firearm and proceeded to shoot Mr. Rose repeatedly in the head and abdomen. Mr. Rose was transported to the Hospital of the University of Pennsylvania where he was pronounced dead shortly thereafter. In the immediate aftermath of the shooting, [Appellant] was seen

walking away from Mr. Rose and exiting the area in a black Acura sedan. Shortly thereafter, police pulled [Appellant] over a few blocks away from the scene driving a black Acura sedan and arrested him for the murder of Mr. Rose.

*Commonwealth v. Ali*, 2013 WL 11264462, at *1 (Pa. Super., June 10, 2013) (quoting Trial Court Opinion, 12/11/12, at 1-2 (unnumbered)).

The PCRA court summarized the procedural history as follows:

[Appellant] was charged with murder, generally, and carrying a firearm on a public street. These charges arose out of an incident during which [Appellant] shot and killed Mr. Rasheed Rose.

[Appellant] was tried before this court and a jury in July 2012. At the conclusion of the trial, the jury found [Appellant] guilty of first-degree murder and carrying a firearm on a public street. On July 20, 2012, this court sentenced [Appellant] to life without parole on the first-degree murder charge and imposed no further punishment on the carrying a firearm on a public street charge. [Appellant] thereafter filed a timely notice of appeal as well as a requested 1925(b) statement.

On appeal, the Superior Court affirmed the judgment of sentence.[1] On December 18, 2013, the Pennsylvania Supreme Court denied [Appellant's] petition for allowance of appeal.

On February 4, 2015, [Appellant] filed a *pro se* PCRA petition, after which he filed supplements to it on March 23, 2015; May 18, 2015; June 14, 2016; and July 19, 2016. [Appellant] also filed a motion requesting that he be permitted to proceed *pro se*, which this court granted on May 24, 2016, following a *Grazier*[2] hearing.

After a careful and assiduous review of all of the filings and the record in this matter, this court determined that [Appellant] had

---

[1] Appellant presented five issues on direct appeal, each of which challenged a trial court ruling. This Court rejected each of Appellant's claims, finding no error in the trial court's rulings.

[2] *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998).

not raised a claim having merit and therefore, on January 13, 2017, this court sent [Appellant] a Pa.R.Crim.P. 907 notice of intent to dismiss. [Appellant] filed a response to the notice. Upon reviewing [Appellant's] response this court concluded that [Appellant's] post-conviction filings failed to raise a single meritorious claim and on February 14, 2017, this court issued an order dismissing his petition without a hearing. [Appellant] thereafter filed *pro se* a notice of appeal [and] a court-ordered Pa.R.A.P 1925(b) statement.

PCRA Court Opinion, 4/19/17, at 1-2 (citations and some capitalization omitted).

In this appeal, Appellant asks us to consider eleven issues, all of which were raised in his Rule 1925(b) statement of errors complained of on appeal. Those eleven claims, which we have reordered for ease of discussion, are as follows:

I.   Did the PCRA court abuse its discretion when it denied Appellant's motion to recuse itself?

II.  Was trial counsel ineffective for failing to properly prepare for trial?

III. Was trial counsel ineffective for failing to challenge the jury selection process?

IV.  Was trial court ineffective for failing to properly cross-examine witnesses?

V.   Was trial counsel ineffective for failing to challenge the admission of evidence?

VI.  Was trial counsel ineffective for failing to object to the prosecutor's failure to disclose evidence?

VII. Was trial counsel ineffective in failing to object to the prosecutor's knowing use of false evidence?

VIII. Was trial counsel ineffective for failing to object to the prosecutor showing an inflammatory and prejudicial photograph of the victim's head?

IX. Was trial counsel ineffective in failing to object to improper statements made by the prosecutor during closing arguments?

X. Was direct appeal counsel ineffective for failing to raise instances of trial court error in direct appeal proceedings?

XI. If the above instance[s] of trial counsel's and direct appellate counsel's ineffectiveness, as to the entirety of the above foregoing claims stated individually do not establish prejudice, then collectively do they?

Appellant's Brief at 2-3.

In his first issue, Appellant contends the PCRA court abused its discretion when it denied Appellant's motion for the PCRA court to recuse itself from these PCRA proceedings. Appellant argues the PCRA court had "displayed biasness, prejudice, and unfairness toward [Appellant] through the trial proceeding[.]" PCRA Petition, 2/4/15, at 3.

As the PCRA court recognized:

The standards for recusal are well established. It is the burden of the party requesting recusal to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially. As a general rule, a motion for recusal is initially directed to and decided by the jurist whose impartiality is being challenged. In considering a recusal request, the jurist must first make a conscientious determination of his or her ability to assess the case in an impartial manner, free of personal bias or interest in the outcome. The jurist must then consider whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This is a personal unreviewable decision that only the jurist can make. Where a

- 4 -

jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overruled on appeal but for an abuse of discretion. In reviewing a denial of a disqualification motion, we recognize that our judges are honorable, fair and competent.

PCRA Court Opinion, 4/19/17, at 5-6 (quoting **Commonwealth v. Abu-Jamal**, 720 A.2d 79, 89 (Pa. 1998) (citations omitted)).

The PCRA court stated that it conducted "an independent self-analysis of its ability to be impartial and determined that recusal was not required." **Id.** at 6. The court explained:

Simply because a judge has made rulings against a defendant does not constitute a valid basis for determining the existence of bias or partiality. In addition, nor do opinions formed by a judge on the basis of facts introduced or events occurring in the course of the proceedings unless they display deep seated favoritism or antagonism that would make fair judgment impossible. Even judicial remarks that are critical or even hostile to counsel, the parties or their cases, ordinarily do not support a bias or partiality challenge, unless they reveal such high degree of favoritism or antagonism as to make a fair judgment impossible.

Here, the rulings previously made by this [c]ourt all were in conformity with the law and any admonition[s] by this [c]ourt of [Appellant] during the prior proceedings were appropriate under the circumstances and did not manifest the type of bias, favoritism, or hostility requiring recusal.

**Id.**

After examining Appellant's claims of bias, the PCRA court concluded recusal was not required. Based on our review, we discern no abuse of discretion on the part of the PCRA court. Therefore, we shall not disturb its denial of Appellant's motion to recuse. Appellant's first issue fails.

In his remaining issues, Appellant challenges the denial of post-conviction relief, presenting eight clams of trial counsel ineffectiveness, one claim of ineffectiveness of direct appeal counsel, and one claim of cumulative prejudice. As this Court has recognized:

> Our standard of review from the denial of post-conviction relief "is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error." *Commonwealth v. Ousley*, 21 A.3d 1238, 1242 (Pa. Super. 2011). This Court "will not disturb findings that are supported by the record." *Id.*
>
> **. . .** When analyzing ineffectiveness claims, we begin with the presumption that counsel was effective. *Commonwealth v. Spotz*, 610 Pa. 17, 18 A.3d 244, 259–60 (2011). "[T]he defendant bears the burden of proving ineffectiveness." *Commonwealth v. Ligons*, 601 Pa. 103, 971 A.2d 1125, 1137 (2009). To overcome the presumption of effectiveness, a PCRA petitioner must demonstrate that: "(1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance." *Id.* "A claim of ineffectiveness will be denied if the petitioner's evidence fails to meet any of these prongs." *Id.* To establish the second ineffectiveness prong, the petitioner must prove that "an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Spotz*, 18 A.3d at 260 (quoting *Commonwealth v. Williams*, 587 Pa. 304, 899 A.2d 1060, 1064 (2006)). To establish the third prong, the petitioner "must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction." *Id.*

*Commonwealth v. Watley*, 153 A.3d 1034, 1039-40 (Pa. Super. 2016).

In his second through fifth issues, Appellant argues his counsel was ineffective for failing to prepare for trial, failing to challenge the jury selection process, failing to cross-examine witnesses properly, and failing to challenge

the admission of evidence. Again, an ineffectiveness claim will be denied if a PCRA petitioner fails to demonstrate any one of the three prongs necessary to establish ineffectiveness. *Id.* at 1040 (citing *Ligons*, 971 A.2d at 1137). Here, we largely focus on the third prong of the test that requires the petitioner to show "there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction." *Id.* (citing *Spotz*, 18 A.3d at 260).

Regarding his assertion of ineffectiveness for failure to prepare for trial claimed in his second issue, Appellant contends counsel failed to meet with him; failed to prepare and present his alibi witness; failed to familiarize himself with discovery materials and secure outstanding discovery materials; and failed to interview, investigate and/or call available witnesses. Appellant's Brief at 17.

A review of the trial transcripts belies Appellant's assertions. It was clear counsel was prepared for trial and was familiar with discovery materials.[3] Further, the prison log reflects that trial counsel's investigators met with Appellant and that counsel visited with him on July 12, 2012, after jury selection but prior to the start of trial. *See* Affidavit of Gregory J. Vrato, Esq., Director of Policy and Compliance for the Philadelphia Prison System, dated

---

[3] We note that Appellant was represented by two different attorneys at the time of his preliminary hearing and prior to trial counsel becoming involved in his representation.

April 14, 2016 and provided to Appellant under cover of letter dated April 15, 2016 from Russell T. Crotts, Assistant City Solicitor. Moreover, as the PCRA court observed, Appellant "utterly failed to articulate what evidence or trial strategy would have come out of additional interview sessions. He also failed to articulate how said additional interview sessions would have resulted in the discovery of evidence helpful to his case or a different outcome." PCRA Court Opinion, 4/19/17, at 9.

The PCRA court examined Appellant's assertions regarding counsel's trial preparation and the testimony Appellant suggests would have been provided by various witnesses. *Id.* at 9-13. The court again concluded that Appellant failed to demonstrate that a different outcome would have resulted. We agree. Because Appellant has not satisfied the third prong of the ineffectiveness test, his second issue fails. **See Watley, supra.**

In his third issue, Appellant argues counsel was ineffective for failing to challenge the jury selection process. Specifically, Appellant took offense at the fact that the trial judge acknowledged a prospective juror's employer was a "good friend" and asked the prospective juror to say hello to the employer. **See** Notes of Testimony (N.T.), Jury Selection, 7/11/12, at 88-89. We find Appellant's argument specious and lacking in any arguable merit. Importantly, Appellant has not demonstrated that failing to object to or strike the prospective juror would have changed the outcome of the trial. Appellant's third issue is devoid of merit.

Appellant next contends trial counsel was ineffective for failing to cross-examine witnesses properly, including Police Officer Dixon-Harris and Detective Byard. In essence, Appellant is claiming that improper cross-examination of these witnesses contributed to his conviction because the jury did not appreciate the importance of the fact Officer Dixon-Harris was not interviewed by Detective Byard and did not complete a form required of officers involved in a high-speed pursuit. No testimony or high-speed pursuit report would have altered the fact that a witness to the fatal shooting called the police and provided a description of Appellant along with a description of his black Acura, including the license plate number; that Officer Dixon-Harris pursued a black Acura with that tag; and that Appellant was operating that vehicle when he was stopped by another officer shortly thereafter.

At the conclusion of trial court's charge to the jury, Appellant declared, "Ladies and gentlemen of the jury. Police Officer [Dixon-Harris] committed perjury. I got proof of it, the Judge and the D.A. won't let you hear it. The chase never took place. I got proof of it." N.T., Trial, 7/20/12, at 145. The trial court instructed the jury "to disregard that outburst by [Appellant]. That's not evidence. That's not for you to consider." *Id.*

On direct appeal, Appellant complained that a trial court evidentiary ruling prevented him from demonstrating the inaccuracy of Officer Dixon-Harris' testimony. This Court agreed with the trial court that the evidentiary ruling—which found that a 911 tape suggesting pursuit of a different black

vehicle constituted inadmissible hearsay—was not error and, even if it were error, it would constitute harmless error. First, we note that trial counsel did attempt to have 911 tapes admitted so any claim that counsel was ineffective for failing to present that evidence cannot succeed. Second, as the trial court observed, and as this Court recognized on direct appeal:

> [T]here was overwhelming evidence of [Appellant's] guilt. An eye witness [*sic*] to the shooting identified [Appellant] as the shooter and several other witnesses testified to observing [Appellant] fleeing the area in the immediate aftermath of the shooting. [Appellant's] vehicle was spotted by police and chased in the area of the shooting in the immediate aftermath of the shooting. Due to the ample evidence of [Appellant's] guilt, the [trial c]ourt's decision to bar [Appellant] from entering an ambiguous 911 tape into evidence constitutes harmless error.

***Commonwealth v. Ali***, 2013 WL 11264462, at *7 (Pa. Super., June 10, 2013) (quoting Trial Court Opinion, 12/11/12, at 7 (unnumbered) (citation omitted) (alterations in original)).

Appellant also challenges the cross-examination of other Commonwealth witnesses, including Detective Williams and Francine Doughty. He contends counsel should have asked Detective Williams why she failed to ask Doughty for a description of the shooter. He also argues that counsel should have cross-examined Doughty in greater detail about her identification of Appellant. A review of the transcript reveals that Doughty knew Appellant from the neighborhood and witnessed the shooting. A review also reveals that trial counsel extensively cross-examined Doughty, challenging her identification of Appellant, her account of the shooting, and

- 10 -

her credibility. *See* N.T., 7/18/12, at 72-90. As the PCRA court determined, "even had counsel asked additional questions of the above two witnesses, the outcome of the case would not have been different because other witnesses also identified [Appellant] as the shooter[.]" PCRA Court Opinion, 4/19/17, at 13.

We find counsel had a reasonable basis for conducting cross-examination of the various witnesses as he did and further find Appellant did not suffer prejudice as a result of counsel's actions. Appellant's fourth issue fails.

Appellant next claims trial counsel ineffectiveness for failing to challenge admission of identification evidence "given the factual circumstances of the highly questionable identification process" involving witnesses Rashida Gee, Lavisha Williams and Francine Doughty. Appellant's Brief at 40. Appellant contends counsel should have moved to suppress their identification of Appellant as the shooter.

As the PCRA court observed, counsel's failure to file a motion to suppress "will constitute ineffective assistance of counsel only when such a motion is of arguable merit." PCRA Court Opinion, 4/19/17, at 14 (citing *Commonwealth v. Wayne*, 720 A.2d 456, 469 (Pa. 1998)). Further, the "purpose of a suppression order regarding exclusion of identification evidence is to prevent improper police action. Thus, where a defendant does not show that improper police conduct resulted in a suggestive identification, suppression is not

- 11 -

warranted." *Id.* (quoting *Commonwealth v. Sanders*, 42 A.3d 325, 332 (Pa. Super. 2012)).

Appellant claims that his identification by Rashida Gee from a photo array was suggestive because the detective involved did not provide "instructions that the shooter may or may not be present." Appellant's Brief at 41. Ironically, Gee did not positively identify Appellant but simply said the person in one of the photos "resembled" the shooter. N.T., Trial, 7/19/12, at 29. Further, Appellant challenges the character of the detective based on the fact he was dismissed from the force. However, his dismissal resulted from falsification of overtime records and was irrelevant. The PCRA court found Appellant's complaint about the Gee identification lacked merit. We agree. Not only was there no evidence of improper police conduct, there was no prejudice to Appellant stemming from Gee's equivocal identification.

Regarding Lavisha Williams, Appellant suggests her identification of Appellant should have been suppressed. Williams testified that she identified Appellant's photo following the shooting. However, she did not identify him from a lineup seven months later because she "had already put the incident out of [her] mind." *Id.* at 124. As the PCRA court recognized, the fact Williams did not identify Appellant at the lineup "went to the weight of her identification, not its admissibility." PCRA Court Opinion, 4/19/17, at 17. Moreover, there was no evidence of any impropriety during the photographic

- 12 -

identification session. Therefore, there was no basis for granting a motion to suppress. *Id.*

The PCRA court also noted that Williams testified that she identified Appellant at the preliminary hearing in January 2010. The court suggested that counsel had a reasonable basis for not objecting to that testimony. The testimony would have opened the door for testimony from Williams indicating she was warned before the preliminary hearing that someone was going to kill her, that she should not testify, and that someone wrote the word "snitch" across her front door the night before the hearing. *Id.* at 18, n. 4 (citing N.T., Preliminary Hearing, 1/5/10, at 109-117).

It is important to note that trial counsel also conducted an effective cross-examination of Williams, pointing out the inconsistencies in her statements about seeing Appellant's face or just parts of it, about her statement that the shooter had tattoos on his arms when Appellant had no tattoos, and about pending criminal charges against Williams. Once again, we agree with the PCRA court that Appellant's assertions regarding the identification testimony lack merit.

Regarding Doughty, Appellant contends counsel should have sought to suppress her identification of Appellant because she claimed the shooter's name was Jamal and that he lived across the street from her. Further, Appellant argues counsel should have objected when the prosecutor showed the jury a photograph of the lineup in which Doughty participated.

The PCRA court rejected Appellant's assertions, finding they lacked merit and that a motion to suppress would not have been granted. PCRA Court Opinion, 4/19/17, at 16. The court acknowledged that Doughty testified she knew Appellant from seeing him in the neighborhood on several occasions. *Id.* Moreover, the prosecutor did not engage in misconduct by showing a photograph of the lineup to the jury because he did so to explain why Doughty was reluctant to identify Appellant at the lineup. *Id.* at 17. Importantly, the PCRA court recognized counsel's effective cross-examination of this witness as well. *Id.* at 16.

Appellant has failed to demonstrate any police misconduct with respect to the identifications made by any of the three witnesses in questions. Accordingly, his claims regarding suppression of identification cannot succeed.

In Appellant's sixth through ninth issues, he claims trial counsel was ineffective with respect to actions of the prosecutor. Specifically, he contends trial counsel failed to object to the prosecution's failure to disclose evidence, its knowing use of false evidence, its use of an inflammatory picture of the victim's head, and its improper statements during closing argument.

The claimed failure to disclose evidence presented in Appellant's sixth issue relates to the testimony of Officer Dixon-Harris and her high-speed pursuit of Appellant. Appellant argues that there was no documentation concerning a pursuit and her testimony to that effect constituted trial by ambush. Essentially, Appellant suggests that Officer Dixon-Harris actually

pursued a different vehicle, a black Dodge Magnum, driven by the actual killer. As the PCRA court recognized, Appellant cannot claim the prosecution failed to disclose the high-speed pursuit when Appellant sought admission of 911 tapes that would supposedly confirm the pursuit of a different black car. As the court noted, both the trial court and this Court, on direct appeal, determined the trial court did not abuse its discretion in denying admission of the 911 tapes. *Id.* at 7-8. "In addition, the record indicates that [the trial court] noted during the trial that there were no written reports to turn over to the defense and that the defense had received the audio tapes of the 911 call about the pursuit." *Id.* at 8 (citing N.T., Trial, 7/19/12, at 92-93). Because Appellant "certainly was aware of the pursuit and the Commonwealth had no additional evidence to supply [Appellant]," Appellant's sixth issue lacks merit.

Appellant next asserts trial counsel was ineffective for failing to object to "false evidence" presented by Officer Dixon-Harris regarding her pursuit of a black Acura, a pursuit Appellant claims did not occur. Appellant argues that if the jury knew Officer Dixon-Harris "lied, there would have been little left of the case against Appellant as the only other evidence against Appellant was highly questionable in-court identifications by strangers." Appellant's Brief at 16. The Commonwealth counters that the "mere fact Officer Dixon-Harris failed to file internal paperwork related to her high speed chase does not mean she committed perjury." Commonwealth Brief at 12. "There is no statute or constitutional provision which mandates compliance with police directives and

. . . there was audio evidence which corroborated the officer's testimony." *Id.* (citing N.T., Trial, 7/19/12, at 92-93).

The Commonwealth also suggests that Appellant has not demonstrated that he would have been acquitted but for the alleged perjury. As we have already explained, on direct appeal this Court determined that the testimony of Officer Dixon-Harris did not prejudice Appellant in light of the "overwhelming evidence" of Appellant's guilt. *Commonwealth v. Ali*, 2013 WL 11264462, at *7 (Pa. Super., June 10, 2013) (quoting Trial Court Opinion, 12/11/12, at 7 (unnumbered)). As the Commonwealth correctly notes, "[t]hree different eyewitnesses identified [Appellant] as the shooter, and Officer Dixon-Harris's alleged perjury was completely unrelated to those witnesses' testimony; accordingly, [Appellant] cannot prove prejudice." Commonwealth Brief at 13. Because Appellant cannot prove that the outcome would have been different if trial counsel objected to the testimony, he cannot succeed on this claim.

In his eighth issue, Appellant argues trial counsel ineffectiveness for failure to object to introduction of a photograph depicting the gunshot wound to the back of the victim's head. Appellant claims the photo "was inflammatory and prejudicial." Appellant's Brief at 50. He contends there was no evidentiary value to the photo because neither the manner nor the cause of death was disputed. *Id.* He asserts allowing the photograph to be

displayed to the jury created bias and ill will in the minds of the jury, causing an adverse effect on the outcome. We disagree.

The admission of photographs of the body of the deceased in homicide cases is within the discretion of the trial court. *Commonwealth v. Woods*, 311 A.2d 582, 583 (Pa. 1973). Further, photographs of a murder victim will not be excluded simply because they are gruesome, and the availability of testimonial evidence does not preclude their admission. *Commonwealth v. Tharp*, 830 A.2d 519, 531 (Pa. 2003).

The PCRA court rejected Appellant's claim, noting that a review of the record reveals that trial counsel objected to the admission of the photograph in color. As a result, the photo shown to the jury was in black and white and "merely showed the entry would and did not display any blood." PCRA Court Opinion, 4/19/17, at 18 (citing N.T., Trial, 7/18/12, at 12. Further, it was displayed only while the assistant medical examiner testified about the photograph and the wounds exhibited on it.[4] *See* N.T., Trial, 7/18/12, at 12-16.

We agree with the PCRA court's conclusion that counsel was not ineffective for failing to object to the photograph "because the claim lacks

_____

[4] The certified record includes two copies of each day's testimony from trial, one of which is a clocked version that displays the time. A review of the clocked version reveals that the photograph was displayed for a total of three minutes in the course of the four-day trial, during the assistant medical examiner's testimony.

merit; as noted, the photograph was not gruesome and served an evidentiary purpose, namely, to demonstrate specific intent to kill." PCRA Court Opinion, 4/19/17, at 18. Further, counsel's failure to object "did not prejudice [Appellant]. The evidence of guilt in this case was overwhelming and, thus, the outcome of the trial would not have been different had counsel successfully objected." *Id.* at 19. Appellant's eighth issue lacks merit.

In his next issue, Appellant contends trial counsel was ineffective for failing to object to "improper comments" made by the prosecutor during his closing argument. Although his PCRA petition identified fourteen separate instances of trial counsel ineffectiveness with respect to the prosecutor's closing argument, *see* PCRA Petition, 2/4/15, at 51-65, and the PCRA court acknowledged a number of them in its opinion, *see* PCRA Court Opinion, 4/19/17, at 19-20, Appellant presents argument on only one of those fourteen instances in his brief, *i.e.*, that the prosecutor "misled the jury and expressed his personal opinion as to the falsity of Appellant's alibi witness's testimony." Appellant's Brief at 51.

> As our Supreme Court has explained:
>
> In the context of prosecutorial misconduct during closing arguments, Appellant must demonstrate that there is merit to the contention that trial counsel should have objected or requested a cautionary instruction due to the prosecutor's misconduct. Appellant can only do so if he can show that the prosecutor was, in fact, engaging in misconduct. Otherwise, there is no merit in the contention of trial counsel ineffectiveness.

*Commonwealth v. Chmiel*, 889 A.2d 501, 543 (Pa. 2005).

The gist of Appellant's argument is that the prosecutor suggested in his closing that the alibi witness, David Drayton, offered worthless testimony as evidenced by the fact it took ten attempts for the prosecutor to get Drayton to admit living in Philadelphia. Appellant suggests the prosecutor's line of questioning in the course of Drayton's testimony was "clearly trickery" that was "clearly formulated for deceptive purposes, which manifested during his closing argument." Appellant's Brief at 52. As such, "the Prosecutor's statements deceptively stripped David Drayton of his testimony's accuracy, causing the jury to wrongly discredit him." *Id.* Appellant suggests that but for trial counsel's failure to object, the outcome would have been different. We cannot agree.

As the Commonwealth asserts, "defense counsel attacked the credibility of Commonwealth witnesses on numerous occasions during his closing; he also personally vouched for the testimony of alibi witness David Drayton." Commonwealth Brief at 32 (citing N.T., Trial, 7/20/12, at 49-58). "As a fair response to these comments, the prosecutor explained why the jury should believe the Commonwealth witnesses and reject Drayton's testimony." *Id.* (citing N.T., Trial, 7/20/12, at 89-90). As the Commonwealth rightfully argues, because defense counsel opened the door to the comments, and because the comments are supported by the record, Appellant's claim lacks arguable merit.

> It is settled that it is improper for a prosecutor to express a
> personal belief as to the credibility of the defendant or other

witnesses. However, the prosecutor may comment on the credibility of witnesses. Further, a prosecutor is allowed to respond to defense arguments with logical force and vigor. If defense counsel has attacked the credibility of witnesses in closing, the prosecutor may present argument addressing the witnesses' credibility.

*Chmiel*, 889 A.2d at 544 (citations omitted).

As noted, defense counsel did attack the credibility of the Commonwealth witnesses. *See* N.T., Trial, 7/20/12, at 48-57. Therefore, comments on the credibility of defense witnesses were justified and Appellant's claim of ineffectiveness fails for lack of merit.

In his tenth issue, Appellant argues that direct appeal counsel was ineffective for failing to raise an instance of trial court error on appeal. While the issue is broadly stated, Appellant focuses his claim on the failure to challenge the trial court's ruling on an objection by trial counsel regarding Appellant's position in lineups. Specifically, the prosecutor suggested Appellant was playing a "shell game" by changing his position in the various lineups, by altering his goatee, and by selecting bald men as "fillers' for a lineup after he grew his hair—knowing a witness previously stated the shooter was bald. *See id.* at 92-93. Trial counsel objected and the trial court overruled the objection. *Id.* at 92. Appellant argues that the prosecutor's comments, to which defense counsel unsuccessfully objected, constituted prosecutorial misconduct because Appellant had the right to be in any position he chose for a lineup.

As the Commonwealth suggests, while Appellant was entitled to change his position in the lineups and to change his appearance, the prosecution was likewise entitled to "explain[] to the jury why these actions would have made a lineup identification more difficult." Commonwealth Brief at 38. Further, even if the claim had some merit, appellate counsel is not required to raise every possible claim on direct appeal. *Id.* "The fact that [Appellant's] direct appeal counsel decided that the best chance on appeal lay in the five claims she raised, and not the instant prosecutorial misconduct claim, does not call direct appeal counsel's professional competency into question." *Id.* (citing, *inter alia*, **Commonwealth v. Jette**, 23 A.3d 1032, 1042 (Pa. 2011) (appellate counsel may forego issues of arguable merit and focus on those claims deemed most promising)).

As the Commonwealth also notes, Appellant cannot demonstrate any prejudice as a result of appellate counsel's actions. The trial judge instructed the jury that Appellant had "the constitutional right to pick the fillers and it's done every day in our court system and [defendants] have a constitutional right to do that." *Id.* (quoting N.T., Trial, 7/20/12, at 132). Appellant is not entitled to relief on his tenth issue.

In his eleventh and final issue, Appellant asks us to consider a cumulative ineffectiveness claim. Both Appellant and the PCRA court cite **Commonwealth v. Hutchinson**, 25 A.3d 277 (Pa. 2011), in which our Supreme Court noted that "cumulative prejudice from individual claims may

be properly assessed in the aggregate when the individual claims have failed due to lack of prejudice." *Id.* at 319. However, a claimant who has failed to prove prejudice based on individual errors "cannot prevail on a cumulative effect claim unless he demonstrates how the particular cumulation requires a different analysis." *Id.* at 318-19 (citations omitted).

Appellant suggests that all of his claims have merit and are supported by the record. He notes particularly trial counsel's failure to prepare for trial and failure to suppress identifications, claims that we have rejected. Appellant's Brief at 54-55. He also contends that trial counsel's failure to conduct proper cross-examination and his failure to object to false testimony are intertwined, specifically mentioning the testimony of Officer Dixon-Harris and Detective Byard, and suggesting that undisclosed material would have exposed their false testimony. *Id.* at 55.

As the Commonwealth recognizes, this Court will engage in a cumulative prejudice analysis only when multiple ineffectiveness claims possess arguable merit. Commonwealth Brief at 39 (citing *Commonwealth v. Hanible*, 30 A.3d 426, 483 (Pa. 2011) ("to the extent claims are rejected for lack of arguable merit, there is no basis for an accumulation [of prejudice] claim"). As we have discussed in detail above, each of Appellant's claims fails to satisfy at least one of the three prongs required to succeed on a claim of

ineffectiveness, including for lack of arguable merit.[5]  Appellant is not entitled to a cumulative prejudice analysis.

Based on our review, we conclude that the PCRA court's denial of Appellant's recusal request and its rejection of Appellant's ineffectiveness claims are supported by the evidence of record and free of legal error. Because this Court will not disturb findings supported by the record, we affirm the PCRA court's order of February 14, 2017.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/25/18

---

[5] To the extent we may not have specifically addressed each and every assertion and sub-assertion of ineffectiveness asserted in Appellant's brief, we can state that, based on our review of Appellant's PCRA petition and the transcripts of his trial, none of Appellant's ineffectiveness claims has successfully challenged the presumption of trial counsel's effectiveness based on the three-pronged test outlined in **Watley, supra**.