J-S12021-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER GILLYARD | : | |
| | : | |
| Appellant | : | No. 1002 EDA 2018 |

Appeal from the Judgment of Sentence November 17, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009292-2016,
CP-51-CR-0009293-2016, CP-51-CR-0009294-2016,
CP-51-CR-0009295-2016, CP-51-CR-0009574-2015

BEFORE: SHOGAN, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY McCAFFERY, J.:                    **FILED APRIL 17, 2020**

Christopher Gillyard (Appellant) appeals *pro se* from the judgment of

sentence entered in the Philadelphia Court of Common Pleas, following his jury

conviction of first-degree murder,[1] criminal conspiracy,[2] intimidation of a

witness,[3] reckless burning,[4] and related offenses in the above-captioned

cases. On appeal, Appellant contends his arrest was not supported by

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2502(a).

[2] 18 Pa.C.S. § 903(a).

[3] 18 Pa.C.S. § 4952(a)(1).

[4] 18 Pa.C.S. § 3301(d)(2).

probable cause, the evidence was insufficient to sustain his conviction of murder, the trial court provided improper jury instructions, and the court erred in admitting illegal DNA evidence. For the reasons below, we affirm.

The facts underlying Appellant's arrest and conviction are well known to the parties, and set forth in detail in the trial court's May 9, 2019, opinion. **See** Trial Ct. Op., 5/9/19, at 4-10. We summarize them herein as follows: On August 23, 2014, at approximately 8:40 p.m., Ricardo Nembhard (Decedent) was shot and killed on Ramona Street in Philadelphia. Aliet Torres and Daniel Montez were in their separate vehicles near the scene, and witnessed the shooting. Both observed Decedent running down the street, with an inner tube wrapped around his neck, before banging on Torres' windshield for help. They also both observed a black four-door car pull very close to Torres' minivan in pursuit of Decedent. Montez saw someone fire shots at Decedent from inside the car, and then observed the car run over Decedent. Both witnesses saw the passenger exit the car, stand over Decedent, and fire three more shots, before getting back in the car and fleeing the scene. **Id.** at 4-5.

Officers responding to the homicide were notified that a car, believed to be the one driven by the perpetrators, was on fire at H and Annsbury Streets. Torres subsequently identified the car on fire as the one used in the homicide, and the car was later determined to be the rented vehicle Decedent was driving shortly before his death. Near the scene of the fire, officers recovered plastic gloves, a ski mask, a can of gasoline, and a set of keys on a lanyard

that also contained several store cards. After further investigation, the officers identified the set of keys as belonging to Brittney Thurmond, Appellant's girlfriend. Trial Ct. Op. at 5-6. An analysis of Appellant's cell phone records placed him in the vicinity of the murder and car fire at the relevant time. *Id.* at 13. *See* N.T., 11/14/17, at 76-77. Furthermore, Appellant's DNA was recovered from a pair of gloves and ski mask found at the scene of the car fire. Trial Ct. Op. at 13.

During Thurmond's first interview with police, she was shown a video of the car fire. Thurmond denied recognizing anyone in the video, but acknowledged the driver was holding her lanyard. She also identified her charred keys and lanyard, and consented to a search of her car and cell phone. At a subsequent interview with police, Thurmond identified Appellant as the "person on the video dropping her keys by the car that is on fire." Trial Ct. Op. at 7. However, at Appellant's trial, Thurmond claimed she did not remember identifying Appellant in the video. She also testified, *inter alia*, that Appellant was with Decedent on the day of the murder and Appellant told her to tell the police that she lost her keys. *Id.* at 7-8.

Dwight Bishop, an inmate, contacted homicide detectives after he met Appellant in prison. Over several months, Appellant told Bishop details about the murder, including the fact that Appellant and his two cohorts — Kareem Todd and Tyrone Foster — intended to rob Decedent, who was supposed to give Appellant marijuana to sell on consignment. After Decedent escaped, the three pursued him in his car, shot him, and then set the car on fire. Appellant

also told Bishop he dropped his girlfriend's keys near the car fire. Trial Ct. Op. at 8-9. The lead investigator testified that this was the "first time he heard the names of Kareem Todd and Tyrone Foster associated with Decedent's death" and, subsequently, both Torres and Montez identified Todd, from a photo array, as the passenger/shooter. *Id.* at 10.

Bishop also told police that Appellant asked him to help "silence" several witnesses including Thurmond, Decedent's wife and stepson, and the lead detective. Trial Ct. Op. at 9. Appellant offered Bishop $1000 for his assistance "tak[ing] care of" each witness, and provided Bishop with Thurmond's personal information, including her date of birth, telephone number, and the license plate number of her car. *Id.*

Appellant was subsequently arrested and charged as follows: (1) at Docket No. 9292-2016 — murder, conspiracy, robbery[5] and related crimes for the murder of Decedent; (2) at Docket Nos. 9293-2016, 9294-2016, and 9295-2016 — criminal solicitation[6] and intimidation of witnesses for his solicitation of Bishop to silence Thurmond, Decedent's wife, and the lead detective; and (3) at Docket No. 9574-2015 — reckless burning, risking a catastrophe,[7] and related crimes for setting Decedent's car on fire. The cases

---

[5] 18 Pa.C.S. § 3701(a)(1).

[6] 18 Pa.C.S. § 902(a)

[7] 18 Pa.C.S. § 3302(b).

- 4 -

were consolidated for a jury trial with three other cases relating to incidents that occurred in October of 2014.[8] On November 16, 2017, the jury returned a verdict of guilty on the following charges: first-degree murder, criminal conspiracy (two counts), possessing an instrument of crime, criminal solicitation (three counts), intimidation of witnesses (three counts), reckless burning, risking a catastrophe, criminal mischief,[9] REAP (two counts), and PWID. On November 17, 2017, the trial court sentenced him to an aggregate term of life imprisonment.

Trial counsel filed a timely post-sentence motion challenging the weight of the evidence supporting the verdicts at five of the dockets — Docket Nos. 9292-2016, 9293-2016, 9294-2016, 9295-2016, and 9574-2015 — which involved the murder of Decedent, the burning of his car, and the attempted intimidation of the witnesses. Counsel did not file post-sentence motions in the remaining three cases. The post-sentence motions were denied by operation of law on March 22, 2018, and, on March 26th, Appellant filed a *pro se* notice of appeal listing all eight docket numbers.[10] On April 10, 2018, this

_____

[8] At Docket No. 9571-2015, Appellant was charged with possession with intent to deliver controlled substances (PWID) and related crimes. **See** 35 P.S. § 780-113(a)(3). At Docket Nos. 9572-2015 and 9573-2015, he was charged with, *inter alia*, recklessly endangering another person (REAP) when he attempted to evade two police officers. **See** 18 Pa.C.S. § 2705.

[9] 18 Pa.C.S. § 3304(a)(2).

[10] We note that prior to June 1, 2018, it was common practice for an appellant to file a single notice of appeal from a judgment of sentence that disposed of

Court issued a rule to show cause, directing Appellant to explain why the appeals filed at trial court Docket Nos. 9571-2015, 9572-2015, and 9573-2015, should not be quashed as untimely filed from the November 17, 2017, judgment of sentence. Counsel filed a response acknowledging the appeals at those docket numbers were untimely since no post-sentence motions were filed in those cases. Thus, on May 1, 2019, this Court quashed the appeals at Docket Nos. 9571-2015, 9572-2015, and 9573-2015, by *per curiam* order. *See* Order, 5/1/19.

Meanwhile, trial counsel filed in this Court a motion to withdraw and Appellant filed a motion to proceed *pro se*. On May 4, 2018, this Court granted counsel's motion to withdraw, and remanded the matter to the trial court to conduct a *Grazier*[11] hearing. Order, 5/4/18. The trial court docket reveals a video hearing was conducted on June 11, 2018, at which time, Appellant was permitted to proceed *pro se*. *See* Docket No. 9292-2016, 5/16/18 ("Video-*Grazier* Hearing scheduled), 6/11/18 ("Listed Today for . . . *Grazier* Hearing

_____

cases at more than one docket number. On that date, the Pennsylvania Supreme Court decided *Commonwealth v. Walker*, 185 A.3d 969 (Pa. 2018), which held that "when a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed[, and t]he failure to do so will result in quashal of the appeal. *Id.* at 977 (footnote omitted). The *Walker* Court, however, determined the ruling would be applied prospectively only. *Id.* Because the notice of appeal herein was filed in March of 2018, before *Walker*, we need not quash this appeal.

[11] *Commonwealth v. Grazier*, 713 A.2d 81, 82 (Pa. 1998) ("When a waiver of the right to counsel is sought [on appeal], an on-the-record determination should be made that the waiver is a knowing, intelligent, and voluntary one.").

held [Appellant] is permitted to proceed *Pro Se* Case is on Direct Appeal").

Appellant subsequently complied with the trial court's directive to file a

Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

Appellant raises the following five issues on appeal:

1. Whether Appellant's arrest was unlawful because it was [not] supported by probable cause?

2. Whether the Commonwealth established that the affidavit provided probable cause for the arrest warrant for arson, murder and related charges?

3. Whether the Commonwealth established the sufficiency of the evidence to sustain the verdict of guilty by the jury for the conviction of murder?

4. Did the trial court abuse it[]s discretion or [commit] and error of law on the improper jury instructions?

5. Did the trial court abuse it[]s discretion or err[] by allowing the prosecution to present D.N.A. evidence illegally, as well as physical evidence illegally?

Appellant's Brief at 5.[12]

_____

[12] We note Pennsylvania Rule of Appellate Procedure 2135 limits a "principal brief" to "14,000 words" and requires an appellant to filed a "certificate of compliance with the word count limit if the principal brief is longer than 30 pages[.]" Pa.R.A.P. 2135(a)(1). Although Appellant filed an application requesting permission to exceed the word limit, this Court denied that request on September 23, 2019. Order, 9/23/19. Nevertheless, the argument section alone of Appellant's brief spans 73 pages, and the brief does not include the requisite certification. We remind Appellant that "[w]hile we construe *pro se* filings liberally, . . . *pro se* litigants must comply substantially with our rules of procedure, as this Court cannot act as counsel." *See In re deLevie*, 204 A.3d 505, 511 (Pa. Super. 2019). Nevertheless, as in *deLevie*, because "Appellant's defective brief has not hampered our review . . . we will we examine Appellant's claims on their merits." *See id.*

Preliminarily, we note the trial court suggests Appellant's first, second and fourth issues are waived because they were raised for the first time on appeal. Trial Ct. Op. at 10, 14. We agree.

Pennsylvania Rule of Appellate Procedure 302 mandates "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Our Supreme Court has explained:

> Issue preservation is foundational to proper appellate review. . . . By requiring that an issue be considered waived if raised for the first time on appeal, our courts ensure that the trial court that initially hears a dispute has had an opportunity to consider the issue. This jurisprudential mandate is also grounded upon the principle that a trial court . . . must be given the opportunity to correct its errors as early as possible. Related thereto, we have explained in detail the importance of this preservation requirement as it advances the orderly and efficient use of our judicial resources. Finally, concepts of fairness and expense to the parties are implicated as well.

*In re F.C. III*, 2 A.3d 1201, 1211–12 (Pa. 2010). Furthermore, Rule 1925(b) mandates that a defendant must file a concise statement of errors complained of on appeal when ordered to do so by the trial court. Pa.R.A.P. 1925(b). "Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii).

In his first and second issues, Appellant argues "he was unlawfully arrested, because the arrest was unsupported by probable cause." Appellant's Brief at 11. Furthermore, he insists the evidence presented by the Commonwealth at this preliminary hearing did not establish a *prima facie* case

against him. *Id.* at 20. Instead, he maintains the detective's testimony at the preliminary hearing was "inadmissible by the Hearsay Rule[.]" *Id.* at 24.

Our review of the certified record reveals Appellant did not challenge the lawfulness of his arrest in a pretrial motion to suppress, or during his jury trial. Accordingly, this claim is waived. *See* Pa.R.A.P. 302(a). Moreover, to the extent Appellant argues the evidence presented at his preliminary hearing was insufficient to support a *prima facie* case, we note: (1) the claim is waived because it was not included in Appellant's Pa.R.A.P. 1925(b) statement, and (2) in any event, "errors at a preliminary hearing regarding the sufficiency of the evidence are considered harmless if the defendant is found guilty at trial." *See Commonwealth v. Ricker*, 120 A.3d 349, 353 (Pa. Super. 2015); Appellant's Statement of Matter Complained of on Appeal Pursuant to Pa.R.A.P. 1925(B), 1/7/19. Accordingly, Appellant's first two claims are waived for appellate review.

In his fourth issue, Appellant raises numerous challenges to the trial court's jury instructions. Appellant's Brief at 73-82. Pennsylvania Rule of Appellant Procedure 302(b) mandates "[a] general exception to the charge to the jury will not preserve an issue for appeal. Specific exception shall be taken to the language or omission complained of." Pa.R.A.P. 302(b). See also Pa.R.Crim.P. 647(c) ("No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate."). Our review of the trial transcript reveals **no**

**objection** by Appellant to any portion of the jury charge. Accordingly, this claim, too, is waived on appeal.

Next, Appellant argues the evidence was insufficient to support his conviction of first-degree murder. However, rather than presenting a straight-forward analysis of the evidence presented at trial as compared to the elements of the offense, Appellant sets forth a 35-page rambling argument raising numerous evidentiary and constitutional challenges that were not raised in the trial court, and are, accordingly, waived on appeal. **See** Appellant's Brief at 39 (challenging admission of Thurmond's prior inconsistent out-of-court statement), 44 (asserting Commonwealth presented only evidence of out-of-court statements "repudiated on the stand"), 49 (arguing Commonwealth "knowingly circumvented" his constitutional right to counsel "due to the deliberate elicit testimony" of jailhouse informant, Bishop), 50 (stating Bishop's testimony should have been suppressed).[13] Indeed, our

_____

[13] Appellant raises two additional claims in his sufficiency argument that do not pertain to the sufficiency of the evidence. First, he insists his due process rights were violated when his prison identification was briefly "shown on the screen" during his jury trial. Appellant's Brief at 58. Although trial counsel did object at the time, this claim was not raised in Appellant's Pa.R.A.P. 1925(b) statement. Accordingly, it is waived. **See** Pa.R.A.P. 1925(b)(4)(vii). Second, Appellant contends the Commonwealth committed prosecutorial misconduct during its closing argument. Appellant's Brief at 66-68. Because **no objection** was made at the time of trial, and the allegation was not included in Appellant's Pa.R.A.P. 1925(b) statement, this claim, too, is waived. **See Commonwealth v. Rose**, 960 A.2d 149, 154 (Pa. Super. 2008) (appellant must object to Commonwealth's closing argument to preserve issue for review; objection may be made immediately after closing).

- 10 -

review of the certified record reveals Appellant did not file any motions in *limine* seeking to preclude either Thurmond's or Bishop's testimony, nor did he object to their testimony at the time of trial. *See* N.T., 11/8/17, at 177-234 (Thurmond's testimony); 11/9/17, at 3-113 (continuation of Thurmond's testimony, 11/14/17, 145-255 (Bishop's testimony). "The law is clear that 'issues, even those of constitutional dimension, are waived if not raised in the trial court.'" *Commonwealth v. Cline*, 177 A.3d 922, 927 (Pa. Super. 2017) (citation omitted).

Appellant's sufficiency argument appears to focus on the purported lack of credibility of the Commonwealth's key witnesses: Brittney Thurmond and Dwight Bishop.[14] Indeed, he emphasizes that Thurmond provided conflicting accounts concerning whether she recognized Appellant in the car fire surveillance video. Appellant's Brief at 41. With respect to Bishop, Appellant maintains the jailhouse informant acted as an agent of the Commonwealth, was "extremely aggressive in his efforts to gain information incriminating" Appellant, and was "most likely . . . given a deal as a reward." *Id.* at 47, 54. He also insists Bishop presented perjured testimony. *Id.* at 60-64.

Our standard of review of a challenge to the sufficiency of the evidence is well-settled:

_____

[14] Appellant also argues the DNA evidence should have been suppressed because it took the Commonwealth "almost 2½ years to test the physical evidence." Appellant's Brief at 71. That argument, however, is addressed in his fifth issue on appeal.

In reviewing the sufficiency of the evidence, [an appellate court] must determine whether the evidence admitted at trial, and all the reasonable inferences derived therefrom viewed in favor of the Commonwealth as the verdict winner, supports the jury's finding of all the elements of the offense beyond a reasonable doubt.

**Commonwealth v. Smith,** 985 A.2d 886, 894–95 (Pa. 2009).  However,

[t]he weight of the evidence is exclusively for the finder of fact, which is free to believe all, part, or none of the evidence, and to assess the credibility of the witnesses.  Questions concerning inconsistent testimony and improper motive go to the credibility of the witnesses.  [An appellate court] cannot substitute its judgment for that of the jury on issues of credibility.

**Commonwealth v. DeJesus**, 860 A.2d 102, 107 (Pa. 2004).

Appellant only challenges his murder conviction on appeal.  In order to convict a defendant guilty of first-degree murder, the Commonwealth must prove, beyond a reasonable doubt, "the fact of the killing, the defendant's involvement, and malice and specific intent to kill on the part of the defendant."  **Commonwealth v. Moore**, 937 A.2d 1062, 1067 (Pa. 2007).  "Specific intent to kill can be inferred from the use of a deadly weapon on a vital part of the body."  **Commonwealth v. Wayne**, 720 A.2d 456, 460 (Pa. 1998).

Moreover, a defendant may be convicted of first-degree murder "under a vicarious liability theory, such as accomplice or conspiratorial liability, [so long as] the fact-finder determines, upon proof beyond a reasonable doubt, that the defendant personally harbored a specific intent to kill."  **Commonwealth v. Smyrnes**, 154 A.3d 741, 746 (Pa. 2017).  Indeed, "[e]ach member of a conspiracy to commit murder can be convicted of murder

- 12 -

of the first degree, regardless of who inflicted the fatal wound." ***Wayne***, 720 A.2d at 460.

In the present case, the trial court concluded the evidence was sufficient to support Appellant's conviction of first-degree murder "because he was part of a conspiracy to commit First Degree Murder." Trial Ct. Op. at 12. The court opined:

> Here, the evidence presented at trial was sufficient to prove that Appellant is guilty of First Degree Murder because he was part of a conspiracy to commit First Degree Murder. The conspiracy was established at trial by the following facts: Decedent was seen by two disinterested eyewitnesses running down the middle of a street, waving his hands and screaming. As Ms. Torres pulled her minivan over, Decedent said, "Please help me, they are trying to kill me." Decedent had an inner tube wrapped around his neck. Appellant was driving Decedent's car, and he pulled up next to Ms. Torres, and stopped. From this car emerged a man who proceeded to shoot Decedent six times. Appellant did nothing to stop the shooting. In fact, after his co-conspirator shot Decedent, he got back in the car with Appellant, and Appellant ran over Decedent's body before taking off, leaving Decedent to die in the street. Appellant and the shooter drove together to H and Annsbury Street, where a video shows them emerging, one minute after Ms. Torres' phone call to 911. Appellant's girlfriend and his friend's stepson both identify him on this video. On the video, Appellant emerges from the driver's seat, circles the car, swinging a lanyard with Ms. Thurmond's keys, then an explosion happens. These keys are found near the scene of the fire that night.
>
> A pair of gloves and ski mask found near the scene of the fire contained Appellant's DNA, and cell phone records place him at or in the vicinity of the scene of the murder and the arson. Over the next few days, Appellant told his girlfriend several times to tell anyone who asked that she lost her own keys, even though he had lost them.
>
> Dwight Bishop, who met Appellant in custody, gave an account of the events of that evening, with specific details that

- 13 -

were confirmed by Aliet Torres and Daniel Montez, as well as the DNA and video evidence. Mr. Bishop knew that Decedent had been choked with an inner tube, shot and run over by a car. He knew that they were driving Decedent's rental car, and that they burned it afterwards. He knew that Appellant had lost his girlfriend's keys near the fire. Mr. Bishop named Kareem Todd as one of the co-conspirators, who until that point had not been a suspect, but was subsequently identified in a photo array by both Aliet Torres and Daniel Montez as being the shooter.

Mr. Bishop's credible testimony, confirmed by eyewitnesses, video, and physical evidence, prove beyond a reasonable doubt that Appellant was part of a conspiracy to murder Decedent. Appellant driving the shooter to find Decedent, then running over Decedent's body, are circumstances and overt acts that show a corrupt confederation had been made.

Viewed in the light most favorable to the Commonwealth, this evidence places Appellant at or in the vicinity of the scene of the murder, as the driver of the car that chased Decedent, allowing the shooter to emerge to shoot Decedent six times, then running him over with the car before fleeing the scene and burning the car in an effort to hide the evidence. This is sufficient to prove beyond a reasonable doubt that Appellant, with his co-conspirators, was responsible for killing Decedent. Malice and specific intent to kill can be inferred by the use of a deadly weapon upon a vital part of the body. In this case, Appellant's co-conspirator used a gun to shoot Decedent in the lung, stomach, small intestines, and liver, which are vital parts of the body. Decedent was unlawfully killed, Appellant, with his co-conspirators, was responsible for his killing, and he [and] the co-conspirators acted with malice and specific intent to kill. All the elements of a First Degree Murder conviction are met.

Trial Ct. Op. at 12-14 (record citations omitted).

We find no basis to disagree. According to Bishop's testimony, Appellant, himself, arranged the meeting with Decedent, allegedly to obtain marijuana to sell on consignment. N.T.,11/14/17, at 159-60. However, Appellant and his cohorts decided to rob Decedent instead. *Id.* at 162. At the meeting location, Appellant and his co-conspirators entered Decedent's

- 14 -

car and "start[ed] robbing him, [and] beating him." *Id.* at 166. Decedent "got away" but Appellant and his cohorts "chased him down and beat him some more." *Id.* at 167. Bishop testified Appellant also told him one of the conspirators shot Decedent and that the three ran him over with the car. *Id.* at 167-68.

Furthermore, eyewitness Montez testified he saw Decedent attempt to stop Perez's minivan for help, when the vehicle driven by Appellant tried to "trap" Decedent between the two cars. N.T., 11/8/17, at 12. Although Decedent was able to escape, Montez explained the vehicle then "pursue[d]" Decedent. *Id.* at 14. He testified that the car hit Decedent from the rear, Decedent fell to the ground, and the car continued to drive forward over his body. *Id.* at 16-17. Montez testified: "Then [Decedent's] underneath, the car drags him and the back wheels clear him, and then the gentleman in the passenger's side gets out and it's another three shots." *Id.* at 17. Bishop's and Montez's testimony was sufficient to establish that, although Appellant did not fire a gun, he "harbored a specific intent to kill" Decedent, and conspired with his cohorts to do so. *See Smyrnes*, 154 A.3d at 746; *Wayne*, 720 A.2d at 460.

As noted *supra*, Appellant's claim focuses on the purported incredibility of Thurmond and Bishop's testimony. Claims "directed entirely to the credibility of . . . testimony . . . challenge the weight, not the sufficiency, of the evidence." *Commonwealth v. Lopez*, 57 A.3d 74, 80 (Pa. Super. 2012). Appellant did not raise a weight claim in his brief, nor did he properly challenge

the weight of the evidence at any time in the trial court. *See* Pa.R.Crim.P. 607(A)(1)-(3) (weight of evidence claim must be raised either orally or in written motion before sentencing, or in post-sentence motion). Accordingly, to the extent Appellant also challenges the weight of the evidence, such a claim is waived.

In his final issue, Appellant argues the trial court erred or abused its discretion when it permitted the Commonwealth to present DNA evidence that it had failed to turn over in pretrial discovery until the eve of trial. Appellant's Brief at 82-83. He emphasizes the Commonwealth provided no explanation why DNA testing did not occur on the items recovered near the car fire for two and one-half years, and was not turned over to the defense until a few days before his first trial date. *Id.* at 83. Appellant contends the Commonwealth "violated the mandatory disclosure requirements" of Rule 573,[15] and "deliberately withheld [the evidence] from the defense." *Id.* Accordingly, he requests a new trial.

"[Q]uestions involving discovery in criminal cases lie within the discretion of the trial court and that court's decision will not be reversed unless such discretion was abused." *Commonwealth v. Rucci*, 670 A.2d 1129, 1140 (Pa. 1996). Pennsylvania Rule of Criminal Procedure 573(B)(1)(a) provides:

---

[15] We note Appellant improperly cites to Pa.R.Crim.P. 305, which was renumbered as Rule 573 in 2001.

J-S12021-20

> In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth **shall** disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. . . .
>
> > (a) Any evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth[.]

Pa.R.Crim.P. 574(B)(1)(a).

Particularly, with respect to DNA testing, this Court has explained that Rule 573 "lacks any provision authorizing the exclusion of evidence and does not require that the Commonwealth perform scientific testing in a **specified time frame**." ***Commonwealth v. Belani***, 101 A.3d 1156, 1163 (Pa. Super. 2014) (emphasis added). Rather, the ***Belani*** Court stated "the proper remedy for 'late' disclosure [is the] authorization of a defense continuance[.]" ***Id.***

The trial court addressed this claim in its opinion as follows:

> Appellant's trial was scheduled for June 19, 2017. Because of several mistakes on the part of the Commonwealth, DNA evidence and phone records were not turned over to the defense until June 13, 2017. . . .
>
> [At a June 23rd hearing, the Commonwealth presented argument regarding the DNA evidence. The assistant district attorney informed the trial court that] Detective Lucke submitted Appellant's DNA for testing on June 10, 2016, but the district attorney assigned to the case did not follow up with the lab until May 12, 2017. The Commonwealth received the DNA report on June 14, 2017.
>
> After this Court considered the testimony, and argument from both Commonwealth and defense, on June 23, 2017, it granted the Commonwealth's request for a continuance, to allow both parties sufficient time to review this evidence and prepare

- 17 -

appropriately. Appellant did not object to the continuance.[16] The trial began almost five months later, on November 7, 2017.

> Rule 403 says, "The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.RE. 403. Although the Court was concerned with the mistakes made by the Commonwealth which caused a delay in turning over the discovery, a continuance of five months ensured that defense was not unfairly prejudiced. Excluding such evidence because of what appeared to be honest mistakes by the Commonwealth would have been an extreme remedy, and not necessary under Rule 403. The decision to admit the evidence was not the result of partiality, prejudice, bias or ill will, but rather, the Court's attempt to resolve the issue in a way that was fair to both the Commonwealth and . . . Appellant. Because both parties had almost five months to review the evidence and prepare accordingly, neither was unfairly prejudiced by the evidence.

Trial Ct. Op. at 15-16 (record citations omitted).

We detect no abuse of discretion on the part of the trial court. Although the Commonwealth's attorneys were, admittedly, derelict in their efforts to obtain timely DNA testing of the items recovered from the car fire, the trial court, in its discretion, concluded there was no evidence of any deliberate attempt to prejudice Appellant. *See* Trial Ct. Op. at 16. Accordingly, the court granted the Commonwealth's request for a continuance to give both parties the opportunity to review the DNA results. *See* N.T., 6/23/17, at 6-7; *Belani*, 101 A.3d at 1163. Accordingly, no relief is warranted.

---

[16] Although trial counsel did not specifically object when the court decided to continue the trial, counsel did state he "object[ed] without any further argument" after the Assistant District Attorney set forth the timeline of events that led to the late testing of the DNA evidence. N.T., 6/23/17, at 6.

Therefore, upon our review, we conclude many of the issues raised in Appellant's *pro se* brief are waived on appeal. We remind Appellant that "any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing." **See Commonwealth v. Adams**, 882 A.2d 496, 498 (Pa. Super. 2005). Furthermore, we conclude the two issues that were preserved for our review are meritless. Consequently, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/17/20